## No. 6652.

### J. M. SERRA É HIJO VS. HOFFMAN & CO.

| 30 | 67 |
| 109 | 175 |
| 109 | 180 |

In determining what effect the discharge in bankruptcy of a principal debtor will have on the obligation of his surety, this court will be guided by the law of Louisiana and not by the bankrupt law.

Under the law of this State the discharge in bankruptcy of the principal on an appeal bond, will not release the surety on that bond from any obligation he incurred by signing the bond.

The surety who pays the debt of his principal is subrogated, by mere operation of law, to all the rights of the creditor. No act of subrogation by the creditor, in his favor, is required.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers, J.*

*Geo. L. Bright* for plaintiffs and appellants.

*Hudson & Fearn* for defendants.

The opinion of the court was delivered by

SPENCER, J. Plaintiff obtained judgment against Hoffman & Co. for $1945 29 in gold, with five per cent interest in gold from twenty-sixth November, 1872, and costs.

Defendants took a suspensive appeal, giving Wolkart as surety on the bond. Pending this appeal, Hoffman & Co. were adjudged bankrupts and discharged as such.

The appeal was tried and the judgment below affirmed against Hoffman & Co. who, however, afterward pleaded their discharge from the judgment.

The plaintiff thereupon in due form proceeded against the surety for the amount of the judgment against Hoffman & Co. The surety pleaded that he was released by reason of the discharge in bankruptcy of his principals; and the court below so held. Plaintiff appeals, and the question is presented to this court.

Counsel on both sides have discussed this question, as one depending on the bankrupt law, and have cited us to numerous authorities from the reports of other States, *pro* and *con*. As might be expected there is considerable conflict among them, and for the simple reason, no doubt, that these courts were governed by different systems of law.

The bankrupt law undertakes to regulate and govern *the rights and obligations of the bankrupt only*. It provides the manner and effect as to himself of *his discharge*, but in no way undertakes to determine the effect of his discharge upon the obligations of others—out of superabundance of caution, however, the 5118th section of the United States Revised Statutes declares: "No discharge shall release, discharge, or affect any person liable for the same debt for or with the bankrupt either as partner, joint contractor, indorser, surety, or otherwise."

In determining the effects of a discharge of the principal, upon the obligations of his surety, we have therefore nothing to do with the bankrupt act. It is the law of Louisiana alone which governs, and to which we must look for a solution. Hence we attach but little weight to the decisions of foreign tribunals upon their own laws, differing perhaps radically from ours. It may well be that the effect of a discharge of the principal would be to release the surety, by the law of Massachusetts, and not to release him by laws of New York.

Under the law of Louisiana, therefore, does the discharge in bankruptcy of the principal release the surety ?

Article 3014, O. C. C., says: "The obligation of the surety toward the creditor is *to pay him* in case the debtor should not himself satisfy the debt," etc.

To satisfy a debt in the sense of the law is to pay it—to perform or do the thing one is obligated to do or perform.

Does a discharge in bankruptcy operate a payment of the debt—a performance of the obligation? In a late case, "Ludeling vs. Fulton," 29 An. 720, this court said: "A surrender in bankruptcy does not operate or have the effect of a payment. Payment extinguishes absolutely the obligation, both morally and legally. Bankruptcy is simply a bar to the enforcement of it." We adhere to that doctrine, and consider it

elementary. When we turn to our Code under the chapter treating of "the extinction of suretyship," we find no such *cause* as that of the *bankruptcy* of the principal. On the contrary, we find by article 3029 that the surety "can not oppose" to the creditor "exceptions which are personal to the debtor." We find, also, by article 3026, that so far from the "bankruptcy or insolvency" of the principal releasing the surety, the latter is given the privilege of proceeding against the principal or his estate for indemnity, before paying or even being sued for the debt.

To hold that the bankruptcy or insolvency of the principal releases the surety, would be to expunge the title of suretyship from our Code. It would be to render that important contract a mockery, a delusion, and a snare. The very purpose, and the only purpose, of suretyship is to save the creditor from the effects of the insolvency, bankruptcy, or inability to pay of the principal.

As we have seen, the obligation of the surety is to pay the debt if *the principal does not pay it.* The defendant's argument makes the surety liable, if the principal *does not pay, or does not go into bankruptcy.* This *last condition is not found* in the law of Louisiana. The distinction between the "insolvency" and "bankruptcy" of the principal, as to its effects on the obligations of the surety, is equally without foundation in our law. It matters not whether *the non-payment* by the principal proceeds from insolvency, bankruptcy, dishonesty, minority, or coverture. It is *the fact of non-payment, non-performance,* by the principal which renders the surety liable. Nor is there any force in the objection that after the bankruptcy the creditor can not subrogate the surety. It requires no act of subrogation by the creditor. *The law* subrogates the surety to such rights as *the law gives* the creditor—to such rights as the creditor has—no more, no less. If the insolvency, bankruptcy, or dishonesty of the debtor has rendered those rights valueless, it is the surety's misfortune—not the creditor's fault. The creditor does not warrant that the debtor will pay the surety. The judgment appealed from is erroneous.

It is ordered and decreed that it be reversed; and it is now ordered and decreed that the plaintiff, Serra ó Hijo, have and recover of the surety, Justin Wolkart, the amount of the judgment of said Serra é Hijo against Hoffman & Co., to wit: nineteen hundred and forty-five dollars and twenty-nine cents, in gold, with five per cent interest in gold thereon from twenty-sixth November, 1872, till paid, and all costs of that suit, as well as the costs of this suit.