In re JEFFERSON.

(District Court, D. Kentucky. May 2, 1899.)

1. BANKRUPTCY—PROVABLE DEBTS—RENT.

A lease for a term of years, reserving rent payable in monthly installments, is terminated by the adjudication of the lessee as a bankrupt during the term; and the landlord has no provable claim against the tenant's estate in bankruptcy for the rent which would have accrued under the lease after the date of such adjudication.

2. SAME—LESSOR'S STATUTORY LIEN.

A state statute giving to a lessor a lien on property of his tenant on the premises to secure the payment of one year's rent due or to become due does not entitle the landlord, when the tenant becomes bankrupt during the term, to priority of payment out of his estate for a year's rent from the date of the adjudication. The lease being terminated by the bankruptcy, no rent can accrue thereafter.

3. SAME.

A state statute providing that, in case a tenant's property on the premises is levied on under execution or attachment, a year's rent to accrue shall be paid out of the proceeds, as a prior claim, does not entitle the lessor to recover such future accruing rent on the bankruptcy of the tenant.

4. SAME—OCCUPATION OF PREMISES BY TRUSTEE.

A trustee in bankruptcy, or the estate which he represents, does not succeed the bankrupt as tenant in a lease of property held by the latter at the time of the adjudication. The landlord is entitled to compensation for the use of the premises while the same are occupied by the trustee, the amount thereof being chargeable as part of the expense of administering the estate.

In Bankruptcy. On review of decision of referee disallowing claim.

John C. Russell, for proving creditor.

Charles S. Grubbs, for trustee in bankruptcy.

EVANS, District Judge. The adjudication in this case upon the voluntary petition of the bankrupt was made March 23, 1899. Among the proofs of debt filed was that of James B. Payne, trustee, for $4,166.66 for rent. The demand was founded upon the terms of a written lease of the premises on Fourth avenue, in Louisville, where the bankrupt had conducted a large fancy grocery business. Those provisions of the lease material to the questions now at issue are as follows:

"Lease, Begins Feby. 15, 1896.

"This indenture, made this 21st day of January, 1895, between James B. Payne, trustee, of the first part, and C. W. Jefferson of the second part, witnesseth, that the party of the first part hereby leases to the party of the second part the following premises, to wit: The entire lot and the three-story, stone front building thereon situated on the east side of Fourth street, between Green and Walnut streets, and known as 'No. 551, 553, and 555 Fourth street, Louisville, Ky.,' being at the corner of the first alley north of Walnut street, together with the frame building on the rear end of said lot, for the space of five (5) years from February 15th, 1896, and covenant to keep the tenant in quiet possession of the premises during said term. It is hereby expressly agreed to and understood by the said parties that the said property is to be used as herewith described, and not otherwise, viz. as a fancy grocery store on the first floor and cellar; the upper floors to be sublet by the lessee for business or apartment rooms, if he so elects. In consideration whereof the party of the second part binds himself to pay for the same three hundred and thirty-three and 33⅓-100 dollars at the end of each and every month, being at the rate of four thousand dollars per annum; to take good care of the premises; and return the same, at the expiration of said time, in as good

order as received, ordinary wear and tear and natural decay excepted, unless the improvements should be destroyed by lightning or other natural cause, or fire not caused by his default; and not to erect, or permit to be erected, on the premises any nuisance, or commit any waste. If destruction as aforesaid, total or partial, ensues, so as to make the premises untenantable for the purpose designed, the lessee may surrender and cancel this lease. The following additional stipulations are hereby declared to be a part of this lease:

"(1) The premises shall not be underlet, except the upper floors, as above stated, or the term, in whole or in part, assigned, transferred, or set over by the act of the lessee, by process or operation of law, or in any other manner whatsoever, without the written consent of the lessor; and for a violation of this stipulation, in addition to the forfeiture provided in the ninth stipulation, the rent shall be doubled while the default continues. * * *

"(p) This lease, at the option of the lessor, shall be void and forfeited in case of any violation of any stipulation herein contained. The stipulation is not to be considered or construed as a penalty, but shall be punctually enforced."

The creditor presenting the claim insists that as landlord he is entitled to a priority of payment of one year's rent to accrue subsequently to the date of bankruptcy by virtue of a lien therefor upon the property on the premises, which lien he claims is given by the laws of the state of Kentucky. The referee disallowed the claim except to the extent of the rent accrued up to the date of the adjudication, and the creditor has asked the court to review the action of the referee, and allow the entire claim. The question presented is one which is constantly arising, and will continue to do so, and its importance has induced the court, after an able argument at the bar, to give it the fullest consideration the pressure of other duties would permit. So much of the statute law of Kentucky as applies to it is as follows:

"A landlord shall have a superior lien on the produce of the farm or premises rented, on the fixtures, on the household furniture and other personal property of the tenant, or under-tenant, owned by him, after possession is taken under the lease; but such lien shall not be for more than one year's rent due or to become due, nor for any rent which has been due for more than one hundred and twenty days. And if any such property be removed openly from the leased premises, and without fraudulent intent, and not returned, the landlord shall have a superior lien on the property so removed, for fifteen days from the date of its removal and may enforce his lien against the property wherever found." Ky. St. § 2317.

"If the property be taken under execution or attachment, the officer shall, out of the proceeds of the property found on the leased premises, and levied on or taken by him, make payment of the rent payable in money, due and to become due, for the year in which the levy is made unless a bond of indemnity be executed. But the plaintiff in the execution or attachment may compel a sale of the property under his process by executing to the officer a bond of indemnity, such as provided for in the Civil Code of Practice, and the remedy provided in it, on a bond of indemnity, shall operate in favor of the person to whom the rent is payable, or other claimant of the property on the bond provided for in this section." Ky. St. § 2315. See provisions in Civ. Code Prac. §§ 211, 641.

"Unless the landlord consents thereto in writing, every assignment or transfer of his term or interest in the premises, or any portion thereof, by one who is a tenant at will, or by sufferance, or who has a term less than two years, shall operate a forfeiture to the landlord," and he may on 10 days' notice recover possession. Ky. St. § 2292.

All the provisions of the bankrupt act (30 Stat. 544) which seem to have any important bearing on the proposition to be discussed may

be grouped as follows: Section 1, among other things, provides that the word "debt" shall include any debt, demand, or claim provable in bankruptcy; and that the word "discharge" shall mean the release of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted by the act. Section 4 provides that any person who owes debts, except a corporation, shall be entitled to the benefits of the act. Section 14 provides that after the expiration of one month from the adjudication the bankrupt may apply for his discharge, and, if there be no opposition on the grounds specified in the section, the discharge will be granted. If there be opposition, provision is made for a prompt settlement of the question. Section 17 provides that a discharge in bankruptcy shall release the bankrupt from all his provable debts except—First, taxes; second, those evidenced by·judgments in actions for frauds, malicious injuries, etc.; third, those not properly scheduled, unless the creditor otherwise had notice or actual knowledge of the proceedings; and, fourth, those created by frauds, embezzlement, misappropriation, or defalcation of the bankrupt while acting in a fiduciary capacity. Section 47 prescribes the duties of trustees, and provides that they shall respectively (1) account for and pay over to the estates under their control all interest received by them upon the property of such estates; (2) collect and reduce to money the property of the estates for which·they are trustees under the direction of the court, and close up the estate, as expeditiously as is compatible with the best interest of the parties in interest, and also that they shall perform the other duties specified in the section, not one of which includes the continuance of the tenancy of rented property. Section 57 regulates the manner of proving claims, and gives the requirements of the act as to the character and contents of proofs of debt, requires the filing of the writing if the claim is founded on one, and also that, if the creditor holds any securities for the payment of the debt, they shall be stated. Section 63 provides that debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date, or with a rebate of interest upon such as were not then payable, and did not bear interest; (2) due as costs taxable; (3) founded upon a claim for taxable costs; (4) founded upon an open account, or upon a contract express or implied; and (5) founded upon provable· debts reduced to judgment between the adjudication and the discharge of the bankrupt less certain costs. This section also provides that unliquidated claims against a bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against the estate. Section 64 provides that debts having a priority are: First, taxes; second, costs of preserving the estate; third, filing fees paid by creditors in certain cases; fourth, costs of administration; fifth, wages earned within three months by workmen, clerks, and servants; and, sixth, debts owing to any person who, by the laws of the state or the United States, is entitled to priority. By section 67 certain liens are

declared void, but it is provided that liens given or accepted in good faith, and not in contemplation of or in fraud of the act, and which have been recorded, if the law so requires, shall be excepted.

The lease under which the claimant insists that he is entitled to priority of payment under the laws of Kentucky certainly created a tenancy, which, by its terms, might continue until the 15th day of February, 1901. During that term the bankrupt's undertaking was to pay monthly to the landlord $333.33⅓ rent as it accrued. Under the Kentucky statute above cited, a landlord, speaking generally, has a lien on the property of a tenant on the premises to secure the payment of the rent for a year ahead. These propositions are undeniable, and unless the necessary and inevitable result of the adjudication in bankruptcy be to deprive the landlord in this case of his tenant, and consequently of his rights as stipulated in the lease and supplemented by the statute, and also to dissolve the contract relations between them, that result should be avoided. If the act of the bankrupt in securing the adjudication is to deprive the landlord in the midst of the term of all the security and advantage for which he had been so careful to provide, the hardship is obvious. His arrangements for a permanent tenancy of the most advantageous kind would thus be destroyed without any agency of his own, and in spite of what he may have taken infinite pains to avoid by the exercise of the wisest and most businesslike foresight. While other creditors, it is true, must suffer by the bankruptcy, no other contract of the bankrupt is liable to precisely similar vicissitudes. And yet the court sees no way to avoid the conclusion that the relation of landlord and tenant in all such cases ceases, and must, of necessity, cease, when the adjudication is made. If the relation does cease, the landlord afterwards has no tenant and the tenant has no landlord. At the time of the adjudication the bankrupt is clearly absolved from all contractual relations with, and from all personal obligations to, the landlord growing out of the lease, subject to the remote possibility that his discharge may be refused,—a chance not worth considering. After the adjudication there is no obligation on the part of the tenant growing out of the lease. He not only owes no subsequent duty, but any attempt on his part to exercise any of the rights of a tenant would make him a trespasser. His relations to the premises and to the contract are thenceforth the same as those of any other stranger. He cannot use nor occupy the premises. No obligation upon his part to pay rent can arise when he can neither use nor occupy the property. The one follows the other, and it seems clear that no provable debt, and, indeed, no debt of any sort against the bankrupt, can arise for future rent. No rent can accrue after the adjudication in such a way as to make it the debt of the bankrupt, and future rent had not, in any just sense, accrued before the adjudication. This result grows unavoidably out of the peculiar relations of landlord and tenant, and the peculiar contract between them, by which rent accrued monthly as the occupation and use of the property progressed. The latter might be interrupted by any of several contingencies; for example, the destruction of the premises, or by the breach of the lessor's covenant for quiet possession, or by forfeiture for subletting, etc. So

that, if use and occupation ceased, so did rent. Hence the claim for future rent is not a fixed liability, as defined in section 63 of the bankrupt act, not only because of the contingencies indicated, but because of the possible dissolution of the term by an act of bankruptcy. And if it be true that rent never accrues after the adjudication, then it follows that there is no lien upon the property to secure the rent. A lien must find its support in the debt. The debt is the principal thing, the lien only the incident. If the debt ceases to exist, the lien necessarily falls. A mortgage executed to secure the payment of a debt created and existing upon an executed consideration—for example, a loan of money—is amply protected by the act, but even such a lien would be instantly destroyed by anything which satisfied or barred the debt. Here the supposed debt, so far from being based upon an executed consideration,—such, for example, as use and occupation of the premises,—never arose at all, because the relation of landlord and tenant, which alone made it possible, had previously been dissolved. Use and occupation, or at least the right to enjoy them, can alone raise the duty or obligation to pay rent for the premises. The one is correlatively the consideration of the other. The duties of the trustee of the bankrupt are clearly defined by section 47 of the act, and can in no way be construed as making him the tenant, nor as authorizing the estate to be a tenant of the landlord under the lease, however much the trustee may become such by express or implied agreement with the landlord for the short time he may be compelled to occupy the premises in the discharge of the duties of trustee. He should, of course, for that time pay rent, and it should be treated as part of the expense of administering the trust estate.

The state statute which provides that in cases where the tenant's property on the premises is levied upon under an execution or attachment a year's rent to accrue shall be paid out of the proceeds as a prior claim is not applicable to cases in bankruptcy. It is a state regulation in cases in which no discharge from his contract obligations can be given by law to the tenant, and in which there is no dissolution by operation of law of his contract relations with the landlord. The bankrupt act alone can do that, and it has made no provision similar to that of the state statute. The court has not overlooked the state law which gives a lien for rent which may accrue within one year, etc., but for the reasons above indicated the court is of opinion that no rent can accrue under the lease after the date of the adjudication. And, as has been seen, if no rent can accrue, there is nothing upon which to make priority of payment, and consequently nothing upon which to rest a lien. The court has not omitted to consider whether there was any way to treat the claim as an unliquidated demand under the provisions of section 63, so that, if it were, it might be adjusted upon a basis that might provide for paying rent during a period that would give the landlord reasonable opportunity to find another tenant; but the effort soon developed the impossibility of doing it upon a logical or satisfactory basis consistent with this opinion, or upon any reasoning that was not wholly artificial. The practice under the

act of 1867 seems to have proceeded upon views similar to those just expressed, and to support the conclusion the court has reached in this case, namely, that the claim for the rent which otherwise would have accrued after March 23, 1899, was not a provable debt against the bankrupt's estate, as the rent never can accrue at all, because of the bankruptcy. Bailey v. Loeb, 2 Fed. Cas. 376, 11 N. B. R. 271; In re Webb, 29 Fed. Cas. 494, 6 N. B. R. 302; In re Breck, 4 Fed. Cas. 43, 12 N. B. R. 215. In reaching this conclusion the court has attached little or no importance to the forfeiture clause of the lease in case of a subletting, because the court would have reached the same conclusion had no such clause been found in the contract, nor a similar provision in the Kentucky Statutes. Indeed, it seems to the court that this result inevitably follows from the peculiar relations between landlord and tenant alone, and from the severance of those relations by the operations of the bankrupt act. Of course, this leaves the landlord at full liberty to make a better lease if he can, although unfortunately it may find him unable to make one so good. This, however, is the unavoidable consequence of any dissolution of the tenancy. The bankrupt act, it must be observed, dissolves practically all the contracts of the bankrupt, and the one with the landlord is no more sacred than the others. The result therefore is that the action of the referee in disallowing the landlord's proof of debt against the bankrupt's estate for rent to accrue after the date of the adjudication is approved and confirmed.