## ATKINS v. WILCOX.

### (Circuit Court of Appeals, Fifth Circuit. December 18, 1900.)

### No. 977.

1. BANKRUPTCY—TRUSTEE—RIGHT TO CONTEST CLAIMS
    Under Bankr. Act 1898, a trustee of a bankrupt is authorized, as representative of all the creditors, to contest the allowance of any claim filed against the estate.

2. SAME—EFFECT ON LEASE—RENT TO ACCRUE.
    Under a provision of a lease that "should the lessee at any time fail to pay the rent punctually at maturity, as stipulated, the rent for the whole unexpired term of this lease shall * * * at once become due and exigible," the filing of a petition in bankruptcy by the lessee at a time when he was not in default in the payment of rent does not mature notes given for rent to accrue in the future, or the lessor's right to enforce a statutory lien therefor.

3. SAME—PROVABLE DEBTS—RENT TO ACCRUE.
    On the bankruptcy of a lessee, notes given by him for installments of rent to accrue in the future under a lease for a building occupied by him for business purposes do not constitute debts provable under Bankr. Act 1898, § 63, subd. 1, where the lease contains provisions for its termination in case the building should become untenantable, authorizing re-entry by the lessor for condition broken, and prohibiting its transfer by the lessee, or the use of the premises for any other purpose than that specified, without the written consent of the lessor.

Appeal from District Court of the United States for the Eastern District of Louisiana.

Robert J. Maloney, for appellant.

E. T. Florence and Chas. Rosen, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. On the 4th day of May, 1899, Leopold Keiffer, by a written lease, rented from the appellant, Mrs. Sarah E. Atkins, certain premises described in the lease for the term of one year, commencing on the 1st day of October, 1899, and ending on the 30th day of September, 1900, for a monthly rental of $333.33⅓, for which Keiffer executed and delivered to the appellant 12 rent notes, bearing even date with the lease, and payable to the lessor, one on the 1st day of November, 1899, and one on the 1st day of each and every succeeding month (except the last one, payable on the 30th of September), fixing the interest at the rate of 8 per cent. per annum from maturity until paid. The lease recited that should the property be destroyed by fire, or should the lessee be deprived of the use of the premises by some other unforeseen event, not due to any fault or neglect on his part, then he should be entitled to a credit for the unexpired term of the lease, and the corresponding proportion of rent notes should be annulled and returned to him. At the time of the making of this lease Keiffer was in possession of the premises under a lease of similar import bearing date 8th of June, 1898, which provided for a term of one year, commencing on the 1st day of October, 1898, and ending on the 30th day of September, 1899. On October 3, 1899, Keiffer presented his petition to the court of bankruptcy to be adjudged a bankrupt, which petition, in the judge's absence, was referred to a referee, who on the same day declared and adjudged the petitioner to be a bankrupt. By a stipulation of the parties, only certain portions of the record in the bankrupt proceeding were brought up on this appeal, from which it appears that the appellant made proof of a secured debt against the estate of the bankrupt on October 31, 1899, claiming the aggregate amount of the 12 rent notes given and held under the lease of date May 4, 1899, and to become payable as above recited. The claim and proof thereof embraced other items, which do not require further notice here. On November 21, 1899, this proof of debt was filed by the referee. The record we have does not show any further action in the bankrupt estate until March 7, 1900, when an account of C. O. Wilcox, trustee of the estate of Leopold Keiffer, bankrupt, was presented to and filed by the referee, who thereon made an order of that date, as follows: "Let a meeting of creditors be held on March 20, 1900, at 3 p. m. Let them be notified according to law, and that they do show cause on the above date why said account should not be approved and homologated." The account showed the receipt of all of the funds that had come into the hands of the trustee, aggregating $3,651.44. It also showed 20 items of disbursement that had been made by the trustee, and bore an item, "Reserved for future costs, $150.00," which, added to the disbursements, aggregated $2,253.77. Among the disbursements is the following: "Mrs. Sarah E. Atkins, landlord. Rent for September, October, and November, 1899, three months, at $333.33⅓, $1,000.00." On March 20, 1900, the

appellant appeared before the referee and filed her written opposition to the account submitted by the trustee, on the ground that she had proved her claim for rent for the whole of the 12 months specified in the lease of May 4, 1899 (and other grounds not necessary here to notice), and that by the laws of Louisiana she has a lien of the first rank on all the property in the leased premises, and that the total assets in the hands of the trustee and on deposit to the credit of the estate were realized from the sale of the property contained in the leased premises, and subject to her lien, wherefore she opposes each and every item on said account, and prays that she be declared entitled to a lien first in rank on all the property contained in the leased premises, or on the proceeds, and that the account of the trustee be amended, and he be ordered to pay to her the full amount of her claim in preference to all other claims. The referee rejected her claim for the months of December, 1899, to September, 1900, inclusive, for reasons elaborately given in his judgment thereon, from which judgment Mrs. Atkins appealed to the judge sitting in the court of bankruptcy, by whom the judgment of the referee was affirmed, and she prosecutes this appeal.

It appears that the trustee occupied the premises during the months of October and November, 1899, and that he allowed and paid on Mrs. Atkins' claim for rent the rent which accrued for the months of October and November, under the current lease, at the rate and amount of the notes which had been given therefor. The appellant insists that the trustee was without right or interest to contest the lien of the opponent, as it was claimed in her proof of debt. We are clear that this position is not well taken. By the express terms of the statute the trustee is selected by the creditors. By the clearest implication he represents all the creditors, and as such representative has an interest in the just administration of the estate which belongs to the creditors. Moreover, this right is expressly recognized in the sixth paragraph of general order in bankruptcy 21 (32 C. C. A. xxii., 89 Fed. ix.), which has itself the force of a statute, even if not clearly founded on the text of the statute, which we think it is. It appears to give the trustee precedence even of the creditors, for the language is that, "when the trustee or any creditor shall desire the re-examination of any claim filed against the bankrupt's estate, he may," etc. The appellant by her proof of debt appears to found her claim, in part at least, on the following provision in the lease:

"Should the lessee at any time fail to pay the rent punctually at maturity as stipulated, the rent for the whole unexpired time of this lease shall, without putting said lessee in default, at once become due and exigible."

In her affidavit in support of her claim she contends:

"According to the terms of said lease, the note maturing November 1–4, 1899, not having been paid, then the whole unexpired amount of said lease represented by said notes becomes due and exigible."

At the date of the adjudication in bankruptcy, and at the date when the debt was proved, there had been no default in the payment of rent under the then current lease, or any violation of its conditions which would render the notes, or any of them, given for the

rent that was to accrue due and exigible, and authorize the lessor to enforce her lien on the property then in the leased premises for the payment of all or any one of the rent notes given and held under that lease. The lease does not provide in express terms that the bankruptcy of the lessee would have the effect to mature the notes and render them exigible. The present bankruptcy act has no direct provision on this subject. The bankruptcy act of 1867 contained this provision:

"Where the bankrupt is liable to pay rent or other debt falling due at fixed and stated periods, the creditor may prove for a proportionate part thereof up to the time of the bankruptcy, as if the same grew due from day to day, and not at such fixed and stated periods." Section 19.

No such provision, or its equivalent, appears in the present act. Its language applicable to the case we are considering is that debts of the bankrupt may be proved and allowed against his estate which are a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date, or with a rebate of interest upon such as were not then payable and do not bear interest. Section 63. This provision has not yet been construed by the supreme court, nor, as far as we are advised, by any one of the circuit courts of appeals. The National Bankruptcy News reports show that it has been frequently ruled on by referees in bankruptcy, and by four of the judges for districts in other circuits. In the opinions of the referees and of the judges of the courts of bankruptcy, just referred to, there is a marked unanimity to the extent that rent to accrue in the future, if it can be called a debt, is a contingent one, both as to its amount and as to its very existence, and that there is no provision in the act of 1898 which allows proof of such debts. In the very nature of the case, there is great diversity of view as to the ground on which this ruling is placed. The opinions and judgments necessarily have relation to the terms of the contract of lease out of which the claim for future rent grew, and are largely controlled by the particular provisions of the respective instruments. Some of the opinions, however, take ground broad enough to cover the subject, without reference to the terms of leases in general use. The judge for the district of Kentucky in his opinion uses this language:

"The court sees no way to avoid the conclusion that the relation of landlord and tenant in all such cases ceases, and must of necessity cease, when the adjudication is made. If the relation does cease, the landlord afterwards has no tenant, and the tenant has no landlord. At the time of the adjudication the bankrupt is clearly absolved from all contractual relations with, and from all personal obligations to, the landlord growing out of the lease, subject to the remote possibility that his discharge may be refused,—a chance not worth considering. After the adjudication there is no obligation on the part of the tenant growing out of the lease. He not only owes no subsequent duty, but any attempt on his part to exercise any of the rights of a tenant would make him a trespasser. His relations to the premises and to the contract are thenceforth the same as those of any other stranger. He cannot use nor occupy the premises. No obligation on his part to pay rent can arise when he can neither use nor occupy the property. The one follows the other, and it seems clear that no provable debt, and, indeed, no debt of

any sort, against the bankrupt, can arise for future rent. No rent can accrue after the adjudication in such a way as to make it the debt of the bankrupt, and future rent has not, in any just sense, accrued before the adjudication." In re Jefferson (D. C.) 93 Fed. 951.

The judge of the court for the Eastern district of North Carolina seems to concur in the views just stated. In his opinion we find this language:

"As to the rent of the bank: The contractual relations being terminated, a landlord is not entitled to prove a claim for rent against a bankrupt after such bankrupt ceases to use the building. The relations of landlord and tenant are severed by operation of the bankruptcy law. The trustee of his estate may, after adjudication, occupy and use the rented or leased premises for the estate; but under such circumstances it would be chargeable to the estate, not as rent under bankrupt's contract, but as cost and expenses of administering the same." Bray v. Cobb, 2 Nat. Bankr. N. 588, 100 Fed. 270.

Touching the language above quoted from the opinion of Judge Evans (In re Jefferson, supra), Judge Lowell, of the Massachusetts district, says:

"With all respect for the learned judge, I must think the above remarks made somewhat hastily, unless they are to be taken as limited to the particular lease in question, or made to depend upon some peculiar provision of the Statutes of Kentucky. Let us consider an actual example. A lease recently examined was made for a term of several hundred years, upon a payment of sixteen thousand dollars at the beginning of the term, and subject to a future rent of one dollar a year if demanded by the lessor. Clearly this would be an asset of a bankrupt's estate which the trustee would almost certainly elect to assume, and I can find nothing in the bankruptcy act which would terminate the lease and entitle the landlord to possession. Many existing ground leases, also, would certainly be assumed by a trustee in bankruptcy of the lessee, and it would be unjust to hold them terminated by the adjudication. It follows, then, that the lease here in question was not determined by the bankruptcy of the lessee, but only by the re-entry of the lessor."

The actual example proposed for consideration by Judge Lowell is a leasehold in form, certainly, but it appears to be substantially, in fact, a purchase of the freehold for a present consideration paid in cash at the beginning of the term, and to have value as an asset equal to the current market price of the freehold in the premises let. It is an estate with such an inconsiderable burden as may well be disregarded, and, as the learned judge says, clearly this would be an asset of a bankrupt's estate which the trustee not only would almost certainly elect to assume, but which the creditors, or the court on their motion or on its own motion, would compel him to assume. The doctrine of election to which he refers sprung out of the state of the law in bankruptcy as it was at an early time in England construed by the common-law courts. The rule as then announced has been greatly modified in England by statutes passed from time to time, and the decision of the English courts on these various statutes, and the decisions of the state courts in this country on the various insolvency acts, are more interesting than helpful in our effort to construe the provision of our bankruptcy law now in force. Moreover, the question as to the effect that the adjudication in bankruptcy has on the relations subsisting between the landlord and tenant, while it is kindred to the question with which we are dealing, its connection there-

with is by no means vital. The language of our statute affecting the claim here involved requires that the debt shall be a fixed liability absolutely owing at the time of filing the petition. Under the insolvent law of the state of Massachusetts prior to the statute of 1879, only such debts (with certain exceptions) were provable as were "absolutely due" at the time of the first publication of the notice of issuing the warrant of insolvency. The case of Bowditch v. Raymond, 146 Mass. 109, 15 N. E. 285, shows that the language "absolutely due" was treated as exactly equivalent to the language "absolutely owing," as it must be, for the statute provided for proving debts payable at a future date. After referring to numerous cases in which it had been held that under that statute future rent to accrue under a lease in which the insolvent debtor is lessee cannot be proved, it is said:

"The principle of these cases is that such rent is not a debt absolutely due, at the time of the first publication. The lease may be terminated by the eviction of the lessee or otherwise, and no rent may ever accrue or become due. The lessor's claim is a contingent one. It is not contingent merely as to amount, but the very existence of the claim depends upon a contingency,"— referring to Bordman v. Osborn, 23 Pick. 295.

Further on in the opinion it is said:

"The existence of any debt in the future depends upon contingencies, and therefore the appellants' claim cannot be proved under our insolvent law prior to the statute of 1879."

In the lease before us the lessee binds himself—

"To make no sublease, nor transfer said lease in whole or in part, nor use the premises for any other purpose than that herein contemplated, without the written consent of the lessor."

And again it declares:

"And, should the lessee in any manner violate any of the conditions of this lease, the lessor hereby expressly reserves to himself the right of canceling said lease without putting the lessee in default; the lessee hereby assenting thereto, and expressly waiving the legal notice to vacate the premises."

It is not so clear that this leasehold is an asset of the bankrupt's estate which the trustee would almost certainly elect to assume, or that the court should on its own motion, or on the motion of creditors, require him to assume. Nor is it quite clear what he could do with it if he did assume it. It is not necessary for us to hold that the adjudication in bankruptcy terminated this lease and absolved the relations between the landlord and the tenant thereby created, nor is it necessary or prudent to announce in advance what the holding should be in any given case which may possibly arise. We therefore content ourselves with announcing that, in our opinion, there was no error in the judgment of the district court rejecting the appellant's claim. That judgment is therefore affirmed.