(33 South. 125.)

No. 13,949.

BERNHARDT v. CURTIS.

In re CURTIS.

(March 17, 1902.)

BANKRUPTCY — ADJUDICATION — EFFECT ON UNEXPIRED LEASE—NOTES FOR RENT —INDORSER'S LIABILITY.

1. A lessee's adjudication in bankruptcy putting an end to the lease as of the date of the adjudication, no rent can accrue thereafter; and, as a consequence, notes given for this future rent fail of consideration, since the rent or debt for which they were given cannot possibly come into existence; and a surety on said notes may plead such failure of consideration.

*On Rehearing.*

2. In a civil case, where a statement of facts is required, the formal statement, signed by the judge, or by the parties or their counsel, may be waived by consent or acquiescence.

3. Where a lessee, holding under an unexpired lease, is adjudicated a bankrupt at a time when he owes no rent, such adjudication does not terminate the lease. The claim for rent subsequently accruing is contingent, is not provable against the estate of the bankrupt, is not barred by his discharge, and the indorser of the notes given for such rent is still liable thereon.

Provosty, J., dissenting.

(Syllabus by the Court.)

Action by David Bernhardt against Edward Curtis. A judgment for plaintiff was affirmed by the court of appeals of the parish of Orleans, and defendant brings certiorari. Affirmed.

McCloskey & Benedict, for applicant. B. R. Forman, Jr., and Benjamin Rice Forman, for respondent.

PROVOSTY, J. There is no dispute in this case as to the facts, both sides submitting the case on the question of law involved. That question is whether a lessee's adjudication in bankruptcy under the bankruptcy act of 1898 [U. S. Comp. St. 1901, p. 3418] has the effect of liberating the surety on the rent notes given for that portion of the term of the lease subsequent to the adjudication.

It is not contested by plaintiff, and the law seems to be settled, that a lessee's adjudication in bankruptcy puts an end to his lease as of the date of the adjudication. In re Jefferson (D. C.) 93 Fed. 951; Bray v. Cobb (D. C.) 100 Fed. 270.

From this the liberation of the surety would seem to follow as a necessary consequence. If there is no longer any lease, and the leased premises have reverted to the lessor, and no rent can possibly accrue, the surety, if he were made to pay, would be made to pay a debt that had never and could never come into existence.

Nor is there any technical obstacle to his urging his liberation. He may plead exceptions "inherent to the debt" (Civ. Code, art. 3060); and this exception is pre-eminently of that character. He may plead the failure of the consideration of the principal obligation. Adams v. Cuny, 15 La. Ann. 485.

Plaintiff's counsel submits two reasons why the surety is not liberated, as follows:

"(1) Because one of the reasons for requiring a surety is to protect the lessor and property owner from the bankruptcy of his tenant. To hold otherwise would be to hold that the obligation of suretyship is doubly conditional,—that the surety binds himself to pay not only upon condition that the maker does not pay, but also upon condition that the maker does not go into bankruptcy.

"(2) Because the very act of congress of which the maker avails himself to go into bankruptcy, the bankrupt act of 1898, § 16 [U. S. Comp. St. 1901, p. 3428], provides that 'the liability of a person who is co-debtor with or guarantor, or in any manner a surety for a bankrupt, shall not be altered by a discharge of such bankrupt.'"

That these grounds have a striking plausibility is undeniable.

The first derives its plausibility from the fact that the word "bankruptcy" has two meanings,—one the popular meaning, in which it is convertible with the word "insolvency," describing the mere inability of the debtor to pay; and the other the technical meaning, describing a legal process by which the lease is put an end to. In the latter meaning of the word the lessee's not going into bankruptcy does enter as a condition into the obligation of the surety. The obligation is conditional upon the continuation of the lease; and, if the lease is put an end to from any cause, the obligation also is put an end to. What the cause may be is immaterial, so long as the effect is realized. Plaintiff would not deny that the possible destruction of the leased premises enters as a con-

dition into the lease. Why not, then, the possible destruction of the lease? Will it be said that the destruction of the leased premises is more efficacious in checking the obligations that were to flow from the lease than is the destruction of the very lease itself?

The second reason derives its plausibility from the false assumption that the surety claims his liberation from the bankruptcy law, when in point of fact he claims it from the force of circumstances. After the lease is abrogated, and the leased premises have reverted to the lessor, there can accrue no rent, and, if the surety were made to pay, he would be made to pay a nonexistent debt. This is what liberates him. Under the plenary delegation of power to enact a bankruptcy law congress may wipe out contracts, but cannot provide that, after the contract is wiped out, obligations shall still continue to flow from it; nor has congress undertaken to provide any such impossibility.

The point is not a new one. In the case of Wolf v. Stix, 99 U. S. 8, 25 L. Ed. 313, the supreme court of the United States said:

"As to the sureties, section 5118, Rev. St., provides that no discharge shall release, discharge, or affect any person liable for the same debt with the bankrupt, either as partner, joint contractor, indorser, surety or otherwise. The cases are numerous in which it has been held—and, we think, correctly—that if one bound as surety for another to pay any judgment that may be rendered in a specified action, if the judgment is defeated by the bankruptcy of the person for whom the obligation is assumed, the surety will be released. The obvious reason is that the event has not happened on which the liability of the surety was made to depend."

In the case of Carpenter v. Turrell, 100 Mass. 452, the supreme court of Massachusetts said:

"A discharge in bankruptcy bars proceedings against the principal and surety on an attachment bond. Such bond is given for the payment absolutely of the judgment when recovered in the suit. The plaintiffs also rely upon the provisions of the bankrupt act, which continues the liability of the sureties and other persons collaterally bound, notwithstanding the discharge of the principal. But we understand that provision to apply to persons who are liable for the debts of the bank-

rupt which existed before, and is discharged by the proceedings in bankruptcy. This bond is not such a debt. It does not become of the nature of a debt until the contingency arises upon which it is made to be made operative, to wit, a judgment valid against the principal. So, when judgment is rendered for the defendant upon the plea of a discharge in bankruptcy, the bond is discharged, not by the proceedings in bankruptcy, but by the determination of the contingency upon which the obligation of the bond is made to depend."

In our case the contingency upon which the obligation of the surety was to arise was the continuation of the lease during the time for which the notes were given, and, since the lease cannot thus continue, the debt cannot arise, and the surety cannot be bound.

It is therefore ordered, adjudged, and decreed that the judgment heretofore rendered herein by the court of appeals be set aside, and that this case be rejected, and the plaintiff pay all costs.

BREAUX, J., dissents.

### On Application for Rehearing.

(June 28, 1902.)

PER CURIAM. The opinion of the court herein was predicated on the following statement, appearing in the brief of counsel for plaintiff, viz.:

"There is but one question in this case: Does the bankruptcy of the maker of a rent note release his surety?"

On that the court's view of the law was given. It now appears, however, from the application for rehearing filed and the brief submitted in support thereof, that there are questions of fact in the case which may take it out of the grasp of the question of law propounded by plaintiff's counsel. It is therefore thought advisable to grant a rehearing.

It is ordered that the decree of this court herein be set aside, and that a rehearing be granted.

(On Rehearing.)

(Dec. 15, 1902.)

MONROE, J. It is alleged in the application for rehearing that the court failed to notice the cases of Ludeling v. Felton, 29 La.

Ann. 720, and Serra e Hijo v. Hoffman, 30 La. Ann. 67, that the judgment rendered is in conflict with section 16 of the bankrupt law [U. S. Comp. St. 1901, p. 3428], and that "the court overlooked the fact that there is no evidence to sustain the defense in the record; no lease; no statement of facts."

If the conclusion upon which the judgment rendered is predicated be correct,—i. e., if it be true that the lease was absolutely terminated by the bankruptcy of the lessee,—the judgment rendered does not conflict with the cases or with the law referred to, since there is nothing in either to sustain the proposition that a surety continues to be liable for the obligations, which would otherwise thereafter mature under a lease which has ceased to exist. As to the remaining ground upon which the application for rehearing is based, it is true that no lease was offered in evidence, but the notes sued on are in the record, and read, "For value to be received in rent for the month of," etc., thus showing the consideration for which they were given, more particularly when considered in connection with the following circumstances:

In the petition for the writ of review it is alleged that "the amount in dispute is small, the principle involved important and far-reaching, and the question presented purely one of law. The facts being simple and admitted, the requirements under the decree * * * in Charlton v. McConnell, 104 La. 230, 28 South. 1014, are fulfilled. * * * The facts, briefly stated, are:

"One Savell was the tenant of Bernhardt, who held Savell's notes, indorsed by Curtis, petitioner. Savell was adjudicated a bankrupt the 15th day of June, 1900, at which date no rent was due. Bernhardt, losing his recourse against Savell, tenant, by operation of the bankruptcy law, sued Curtis, surety, on two of a series of notes maturing after the adjudication in bankruptcy. Curtis answered, admitting his indorsement, but averring 'that the said notes, and his indorsement thereon, import no legal obligation against this defendant for the following, among other, reasons: That Frank Morgan Savell, the party for whom respondent indorsed said notes, was the lessee of the plaintiff herein, and was such at the date of the indorsement of said notes; that said Savell, upon his own petition, was adjudged a bankrupt in the honor-able the United States district court on the 15th day of June, 1900; that at said date no rent was due or owing plaintiff by said bankrupt, and no rent has subsequently become due or exigible for the reason that under the bankrupt laws of the United States the adjudication in bankruptcy terminated all leases and all contractual obligations arising thereunder or flowing therefrom; that only rent already due is a claim in bankruptcy, and the rent which is herein sued for became due subsequent to said adjudication; that, moreover, under said law, the lessor became repossessed of the leased premises by the fact of the adjudication, for such disposition as to him may seem meet and proper, and it is against good morals, conscience, and equity that he can enjoy the rent of said premises by reason of his possession, and sue for rent never exigible because without consideration; and that, in any event, the contract of suretyship is ancillary to and dependent upon the lease aforesaid, and, said lease having fallen, and being now nonexistent, no legal obligation can arise thereunder, and hence the liability of respondent, if any there was, terminated and ended at the caducity of said lease.'

\* \* \* \* \* \* \* \* \*

"Under the bankruptcy act only real, existing claims are provable debts. Bankr. Act 1898, § 63, subd. 1 [U. S. Comp. St. 1901, p. 3447]. Contingent liabilities are not provable, and that rent not yet accrued is such a liability is now established jurisprudence. This, though, was offset by the law giving to the landlord the immediate possession of his premises upon the adjudication, for such disposition as he sees fit. But it never contemplated his right to retake it, and to sue for his rent besides."

Following these allegations is an argument, with citation of authority in support of the legal propositions upon which the petitioner relies, and it is then alleged "that the only defense to the above proposition advanced by the plaintiff was section 16 of the bankruptcy act [U. S. Comp. St. 1901, p. 3428], which in terms provides that the obligations of co-guarantors of the principal shall not be affected by his discharge."

After the writ of review had been issued, and the record had been sent up, agreeably to the order made upon this petition, counsel

for petitioner filed a brief, in which they say, inter alia: "There is but one question presented by this writ of review: Was the obligation herein sued on ever in existence? What might or might not be the effect of obligations once in esse is not presented here. The facts are not disputed. No witness was examined in either court."

And then follows a repetition of the statement of facts contained in the petition.

To all this the counsel who then represented the plaintiff replied by means of a brief, the opening sentence of which reads: "There is but one question in this case: Does the bankruptcy of the maker of a rent note release his surety?"

He then argues the question thus stated, and joins the opposing counsel in invoking a decision from this court, without in any way questioning the correctness or sufficiency of their statement of the facts or the manner in which it has been presented.

In acting upon the case originally, therefore, this court had before it a statement distinctly propounded by one side and acquiesced in by the other, purporting to include all the facts essential to a decision, and this was accompanied by assurances from both sides that there was but one question, and that a question of law, to be considered. Further than this, the present counsel for plaintiff does not even now challenge the truth of the statement that "no witness was examined in either court," nor does he assert that any other facts than those which, in the manner related, have been here presented, were presented to or acted on by the courts in which the case was originally tried. It would seem, under these circumstances, that this court had the right to assume that all the facts necessary to the action invoked by both litigants were admitted and appeared in the record, and it is hardly correct to say that it had before it no evidence to sustain the defense, and no statement of facts.

A re-examination of the case has, however, led to a different conclusion from that heretofore expressed as to the main question of law.

The text of the bankruptcy act and the federal jurisprudence leave no room for doubt that a claim for rent accruing (under a lease previously entered into) after the lessee has been adjudicated a bankrupt is not provable against his estate, and hence is not barred by his discharge. Bankr. Act 1898, § 63 [U. S. Comp. St. 1901, p. 3447]; In re Collignon, 4 Am. Bankr. R. 250; In re Commercial Bulletin Co., 2 Woods, 220, Fed. Cas. No. 3,060; Bailey v. Loeb, 2 Woods, 578, Fed. Cas. No. 739; In re Ells (D. C.) 98 Fed. 967; Atkins v. Wilcox, 44 C. C. A. 626, 105 Fed. 595, 53 L. R. A. 118. The same doctrine is applied to assessments on corporate stock, and, generally, to obligations upon continuous contracts which accrue after the bankruptcy of the obligor. 16 Am. & Eng. Enc. Law (2d Ed.) pp. 776, 777; 5 Cyc. p. 397.

It has been held by the United States district courts for Kentucky and North Carolina that the lessee's adjudication as a bankrupt terminates the lease, severs the relations of landlord and tenant, and places the parties, so far as the future is concerned, in the same position as though no lease had ever existed. In re Jefferson (D. C.) 93 Fed. 951; Bray v. Cobb (D. C.) 100 Fed. 270.

In Re Ells (D. C.) 98 Fed. 967, however, Judge Lowell, of the Massachusetts court, quoting the language of Judge Evans of the Kentucky court, said:

"With all respect to the learned judge, I must think the above remarks made somewhat hastily, unless they are to be taken as limited to the particular lease in question, or made to depend upon some particular provision of the statutes of Kentucky. Let us consider an actual example. A lease recently examined was made for a term of several hundred years, upon a payment of $16,000 at the beginning of the term, and subject to a future rent of $1 a year, if demanded by the lessor. Clearly, this would be an asset of the bankrupt's estate, which the trustee would almost certainly elect to assume; and I can find nothing in the bankrupt act which would terminate the lease, and entitle the landlord to possession. Many existing ground leases also would certainly be assumed by the trustee in bankruptcy of the lessee, and it would be unjust to hold them terminated by the adjudication. It follows, then, that the lease here in question was not determined by the bankruptcy of the lessee, but only by the re-entry of the lessor."

In Atkins v. Wilcox, 44 C. C. A. 626, 105 Fed. 595, 53 L. R. A. 118, the United States circuit court of appeals sitting in New Or-

leans considered both questions,—i. e., whether rent accruing after the bankruptcy of the lessee, under an unexpired lease, is provable against his estate, when no rent is due at the time of the adjudication, and whether the bankruptcy of the lessee terminates the lease, —and it disposed of the case by affirming the judgment of the district court to the effect that the claim for rent accruing after the adjudication is not provable in bankruptcy, because contingent. As to the other question, the decisions of the district courts hereinbefore referred to were reviewed, but it was not considered necessary to say which of them correctly interprets the law; the opinion of the court concluding as follows:

"It is not so clear that this leasehold is an asset of the bankrupt's estate which the trustee would almost certainly elect to assume, or that the court should, on its own motion or on the motion of creditors, require him to assume. Nor is it quite clear what he could do with it if he did assume it. It is not necessary for us to hold that the adjudication in bankruptcy terminated this lease, and absolved the relations between the landlord and tenant thereby created; nor is it necessary, or prudent to announce in advance what the holding should be in any given case which may arise."

In view, therefore, of the difference of opinion among the judges of the district courts, and of the failure of the higher federal tribunal to determine between them, the question at issue may be regarded as unsettled in the courts specially charged with the interpretation of the bankrupt law.

Dealing with it from that point of view, like the district judge for Massachusetts, we "find nothing in the bankrupt act which would terminate the lease and entitle the landlord to possession." And we are unable to reconcile the established federal jurisprudence to the effect that his adjudication as a bankrupt does not relieve the lessee of his obligation with respect to rent subsequently accruing under an unexpired lease with the proposition that the effect of such adjudication is to terminate the lease. Nor is it clear to us how the latter proposition can be maintained consistently with the idea that the trustee of the bankrupt lessee may, of his own notion, or by direction of the court, elect to assume the unexpired lease as an asset of the estate, since,

if the lease terminates with the adjudication, there would appear to be nothing to be assumed.

Under our state law the practice has always been to treat an unexpired lease as an asset to be included in the schedule of property surrendered, and, although no particular case suggests itself at the moment in which the effect of such surrender upon the obligations of the lessee's sureties has been considered, there would seem to be no good reason why, if there had been in the state law a provision similar to that contained in the federal statute (meaning section 16 [U. S. Comp. St. 1901, p. 3428] ), such provision should not have been enforced. Upon the other hand, it has been held by this court that the bankruptcy laws of the United States undertake to "regulate and govern the rights and obligations of the bankrupt only"; that "out of a superabundance of caution * * * the 5118th section of the United States Revised Statutes declares, 'No discharge shall release, discharge, or affect any person liable for the same debts for, or with, the bankrupt, either as partner, joint contractor, indorser, surety or otherwise,' but that, in determining the effect of the discharge in bankruptcy of the principal upon the obligation of his surety, the law of Louisiana alone governs, and that under it the surety is not released by such discharge." Ludeling v. Felton, 29 La. Ann. 719; Serra e Hijo v. Hoffman, 30 La. Ann. 67.

If the petitioner now before the court is dissatisfied with this construction and application of the law of Louisiana, he finds himself confronted with the fact that the bankruptcy law was enacted by the congress of the United States in the exercise of constitutional authority, and he must needs ask himself whether the provision of that law limiting its operation to the bankrupt himself is not germane to the subject, and competent legislation, and whether the construction for which he contends does not destroy the effect of that limitation by operating the release of the sureties of a bankrupt lessee with respect to a part of his contract.

Referring to the construction placed upon that provision by the federal judiciary, it will be found that in the case of Wolf v. Stix, 99 U. S. 8, 25 L. Ed. 309, the supreme court of the United States was dealing with a liability which, though contingent, was prova-

ble in bankruptcy, and from which the principal debtor was, therefore, released by his discharge. And, though a case was stated by way of illustration in which the release of the surety would result from the discharge in bankruptcy of the principal debtor, the sureties in the case then before the court were held liable notwithstanding such discharge of their principal.

In the case now before this court the obligation of the lessee for rent accruing after his bankruptcy belongs to that class of contingent liabilities which, as we have seen, is not provable against the estate of the bankrupt, and from which the bankrupt himself is not released by his discharge. A fortiori, therefore, are his sureties not released. It may be remarked, in conclusion, that we do not understand that this lessor took possession of the leased premises upon the bankruptcy of his lessee. If such had been the fact, and the lease had been thus terminated by consent, the defendant should, and doubtless would, have proved it, and in that case the lessor would have been entitled to recover no rent thereafter from either the lessee or his surety. Upon the case as presented we are of opinion that there was no error in the judgment of the court of appeals, and it is now ordered, adjudged, and decreed that the same be affirmed, the costs of this proceeding to be paid by the defendant in the suit, applicant for the writ of review.

PROVOSTY, J., dissents, adhering to the views expressed in the original opinion.