CYRUS A. WHITE *vs.* MARTIN H. GRIFFING.

| 44 437
| 73 703

Where there is a leasehold estate among the assets of a bankrupt, the assignee is not bound to take the property unless it is for the interest of creditors that he should do so.

And he is to be allowed a reasonable time, before making his election, in which to ascertain whether the lease has any value.

If he accepts the lease he is bound by its covenants.

And his acceptance takes effect from the time when the bankrupt proceedings were instituted.

A sale of the assignee's interest in the lease and the receipt by him of a considerable sum of money for it, would seem to involve an acceptance of the lease by the assignee.

Where a party had given a guaranty for the payment of the rent by the lessee, and the assignee had sold the leasehold property to the lessor, it was held, (assuming the assignee to have accepted the lease and the sale to have carried the assignee's interest in it,) that the sale extinguished the lease and dis-

charged the guarantor from all liability accruing after the institution of the bankrupt proceedings.

In a suit brought by the lessor upon the guaranty the defendant offered evidence to show that the assignee employed counsel to defend a suit brought by the lessor against the lessee, after the proceedings in bankruptcy had been instituted, to obtain possession of the premises. The assignee testified that he had no recollection of employing counsel, but thought he did not assume the responsibility of defending the suit. The defendant then offered a witness to testify that he heard the assignee engage the counsel. Held that this evidence, though properly admissible in chief, was yet admissible in rebuttal for the purpose of discrediting the testimony of the assignee.

ASSUMPSIT, upon a guarantee of the performance by a lessee of his covenants in a lease; brought to the Superior Court in Fairfield County, and tried to the jury, upon the general issue with notice, before *Beardsley, J.*

Upon the trial the plaintiff introduced in evidence a written lease made by himself to one Charles E. Griffing and the guarantee of the defendant thereon, with evidence of the due execution of the same, and also evidence to prove that upon the execution of the lease the lessee entered into possession of the leased premises, and continued in possession up to the 1st day of August, 1875, when he was ejected from the same under an execution issued upon a judgment against him in a suit of summary process in favor of the plaintiff. The plaintiff claimed to recover upon the guarantee a portion of the rent from the 1st of November, 1874, to May 1st, 1875, which was unpaid, and also claimed to recover damages for waste, which he claimed, and introduced evidence to prove, that the lessee had committed upon the premises in violation of his covenants, during the year commencing May 1st, 1874, and ending May 1st, 1875.

The lease was dated April 27th, 1874, and was for the term of eight years from November 1st, 1873, for a yearly rent of $575, payable on the first day of January in each year; the rent to commence May 1st, 1874, and the first payment to be made for the rent from May 1st to November 1st, 1874; the subsequent rent to be paid from November 1st to November 1st, during the term. The guarantee was of the same date with the lease, was endorsed upon it, and was "for the punc-

tual payment of the rent and performance of the covenants in the within agreement mentioned."

The defendant introduced evidence to prove, and it was not denied, that upon proceedings instituted by certain of his creditors, under the United States bankrupt act, the lessee was on the 13th day of February, 1875, adjudicated a bankrupt, and F. S. Wildman of Danbury appointed assignee of his estate, which estate was now in process of settlement.

The defendant also offered evidence to prove, and it was not denied, that on the 7th day of October, 1875, Wildman, as such assignee, offered for sale at public auction such title and interest as he, as such assignee, had in the leased premises, which was bid off by one Taylor, at whose request the assignee executed to the plaintiff a quit-claim deed of such interest. The plaintiff claimed, and introduced evidence tending to prove, that Wildman as assignee never assumed the ownership of the lease, nor of any interest in the leased premises, nor any possession of the same, but that from the time of his appointment as assignee up to the sale he refused to assume any rights or responsibility in respect thereto, and that the sale was merely experimental to ascertain whether the lease had any value, and that at the time of the sale he declared that he would sell such interest as he had in the premises, if he had any. The defendant denied that the facts upon this point were as claimed by the plaintiff. He also claimed that Taylor in fact acted as agent of the plaintiff in buying the lease at the auction, which was denied by the plaintiff.

The defendant claimed, and it was not denied, that on January 1st, 1875, rent due from May 1st, 1874, was paid, and that the rent from November 1st, 1874, to November 1st, 1875, was not payable under the contract till January 1st, 1876. He also claimed, and offered evidence to prove, that the plaintiff purchased the lease with full knowledge of its terms, and paid $225 to the assignee for it.

The defendant requested the court to charge as follows:—

1st. That if the jury should find a purchase of the lease by the lessor from the assignee, and that it was purchased

with full knowledge of its condition and the amount of rent paid thereon, the defendant was not liable as surety in this action for rent due after the purchase.

. The judge charged, *pro formâ*, that the defendant might be liable, though the assignee sold the lease, and that such liability would extend to May, 1875, unless the assignee assumed ownership of the lease, in which case he would be liable only till February 13th, 1875, but was liable to that time. And that whether the assignee assumed ownership or not was a question of fact for the jury.

2d. That the surety could not be held liable for waste committed on the premises when in legal possession of the assignee.

The judge, *pro formâ*, charged the jury that the law was so, but that it was for the jury to say whether the premises were ever in the legal possession of the assignee. That if he never assumed the ownership or possession of the same, this principle of law had no application to the case.

3d. That the legal possession of an assignee when he sells a lease relates back to the commencement of proceedings in bankruptcy.

: The judge charged that this, as a proposition of law, was correct, if the assignee assumes the ownership of the lease or sells as owner. That it was for the jury to say whether the sale in this case was made by the assignee as owner, or was merely experimental, to ascertain what, if anything, would be paid for such interest, if any, as the law cast upon him as assignee, without any assumption by him of any interest in the same.

4th. That a sale of the assignee's interest was in law an acceptance of the lease, and a taking of the possession of the premises by the assignee under the lease.

. But the court charged that it was a fact for the jury to find, whether or not the assignee did take possession of the premises, or assume the lease, by such offering at public vendue, and such quit-claim deed of his interest, or whether the offering of the same at public vendue was only intended by the assignee to ascertain what, if anything, could be obtained for

such interest, if any, as he had in the lease, without assuming the lease or rendering himself liable to perform any of its covenants; and that if the jury should find that the assignee had not taken possession of the premises or assumed the lease, then the defendant would be liable as surety for the performance of the covenants of the lease for such time, according to the terms of the guarantee.

5th. That the taking of the quit-claim deed from the assignee by the plaintiff, paying the purchase money, retaining possession thereafter, and claiming damages in this action, for the amount of money so paid, estopped the plaintiff from denying that the sale was a complete sale.

But the court did not so charge.

6th. The plaintiff offered evidence of waste during the first year of the lease. The defendant objected to any evidence of waste between the 13th day of February and 1st day of May, 1875, but the court admitted it, subject to direction in the charge.

And the court charged the jury that such evidence might be taken into consideration by them, provided they should find that the assignee did not take possession of the premises, or assume the lease. But that if they should find that the assignee had taken possession of the premises or assumed the lease, they could not take into consideration any evidence of waste committed after the 13th day of February, 1875.

The defendant claimed that the assignee had employed the law firm of Brewster & Tweedy, to defend the suit of summary process brought against the lessee by the plaintiff. In reply to this the plaintiff offered the assignee as a witness, who testified that he had no recollection whether or not he hired counsel to defend in the suit, but that he thought he had not assumed the responsibility of a defence of the case. The defendant then offered his own testimony that the assignee had in his presence so employed said law firm, but the court refused to admit the evidence.

The jury having returned a verdict for the plaintiff, the defendant moved for a new trial for error in the rulings and charge of the court.

*L. D. Brewster,* in support of the motion.

1. The defendant asked the court to charge that "the taking of the quit-claim deed from the assignee by the plaintiff, paying the purchase money, retaining possession thereafter, and claiming damages in this action for the amount of money so paid, estopped the plaintiff from denying that the sale was a complete sale." But the court did not so charge, but on this, and on all the other requests, assumed that it was still a question of fact for the jury to say whether or not the assignee had accepted the lease. We claim here a treble estoppel. 1st. An estoppel in pais. 2d. An estoppel by record. 3d. An estoppel by an admission in the pleadings. The plaintiff admits, affirms and adopts the sale in all the ways in which a vendee can. He can not now repudiate it. "A party by actually affirming a contract or purchase, as by suit or the reception of money upon it, is estopped thereafter to deny its force and effect." Bigelow on Estop., 584, and note 1. "Whatever is admitted on the record need not be proved and cannot be disproved." Roscoe on Ev., (12th ed.,) 80. But irrespective of the question of estoppel, the court below erred in leaving it to the jury to decide as a question of fact whether or not the assignee ever assumed possession of the lease. The sale of the lease and receipt of money therefor was, of itself in law, an assumption of the lease. 1 Smith Lead. Cas., (H. & W. ed., 1872,) 1243, and cases there cited; Taylor Land. & Ten., § 456; 3 Parsons on Cont., 490; *Thomas* v. *Pemberton,* 7 Taunt., 206. In *Turner* v. *Richardson,* 7 East, 343, the court held that a mere *offering* to sell was simply an experiment to test value, but the spirit of the whole decision is that if a sale had been actually made, as was here the case, that act would have been an assumption of the lease. Possession is not the test of acceptance, it is only an incident. *In re Ten Eyck,* 7 Bank. Reg., 26. If we are right in the foregoing positions we are entitled to a new trial, since the whole case was put to the jury on a false issue, and it is evident from the verdict that the jury were misled by the charge.

2. There was no rent in arrear for which the defendant was liable. His guarantee was for the payment of rent "for

one year." It was signed April 27th, 1874. According to its terms this guaranty is only good for one year. It may be construed to cover a year between November, 1873, and November, 1874, or a year from the signing of the same, or from May 1, 1874. But however the question of the duration of the guaranty is viewed, there was no rent due according to the terms of the lease when the guaranty expired, nor till January 1st, 1876, eight months after the latest possible term of the suretyship had expired, and three months after the landlord had bought in the lessee's right. Rent is not a debt until it is due. *Perry* v. *Aldrich*, 13 N. Hamp., 350, and cases there cited; *Russell* v. *Fabyan*, 28 id., 545; *Wood* v. *Partridge*, 11 Mass., 493; *Fitchburg Factory* v. *Melin*, 15 id., 270; *Van Wicklen* v. *Paulson*, 14 Barb., 654; *Jacques* v. *Short*, 20 id., 269, 279. But if the covenant to pay rent on a specified day creates no debt until the day of payment arrives, how can there be any breach of the covenant before that time? At most the surety only guaranteed that the tenant should perform the covenants from May to November. It is only by construction and implication that he can be held longer. "The contract is not to be extended to any other time than is expressed, or necessarily included in it." Burge on Suretyship, 40; 3 Addison on Cont., § 1119.

3. The voluntary purchase of the lease by the landlord put him in the place of the first lessee as regards the surety and released the latter from all rent not then due. When the greater and less estate meet in the same person at law the less estate is annihilated, whether they met by his own act or the act of the law. "*Nemo potest esse et dominus et tenens.*" *Hughes* v. *Robotham*, Cro. Eliz., 302; Woodfall on Land. & Ten., 132, 274, 338; *Reed* v. *Latson*, 15 Barb., 9; *York* v. *Jones*, 2 N. Hamp., 454; 3 Sugden on Vendors, 23. In a lease so merged, rent not due at the time of merger passes as an incident of the reversion and is extinguished. 1 Furlong Land. & Ten., 547; *York* v. *Jones*, supra; *Stout* v. *Keen*, 3 Harring., 82; *Webb* v. *Russell*, 3 T. R., 393; *Roach* v. *Wadham*, 6 East, 289.

4. It was for the jury to find when the lease was delivered

—when the parties went into possession—what practical construction they had put upon the contract by their actions at the time—whether there had been any possession by the first lessee previous to April 27th, 1874; all of which facts might bear materially on the liability of the defendant. When no such facts are taken into consideration, the lease "in computation of time" takes effect from the day in which the term is by the contract to commence, although it be a day in the past. Taylor's Land. & Ten., § 70; *Enys* v. *Donnithorne*, 2 Burr., 1192; *Bird* v. *Baker*, 1 Ellis & Ellis, 2, 3, 12.

5. The assignment by act of the law worked no forfeiture of the lease, however the rule may be in case of voluntary bankruptcy. Taylor on Land. & Ten., § 408; 3 Parsons on Cont., 492; 2 Greenl. Ev., § 245; *Starkweather* v. *Cleveland Ins. Co.*, 4 Bank. Reg., 344; Hilliard on Bankruptcy, 141.

6. The surety defends in this action as well for the bankrupt's creditors as for himself. Whatever he has to pay as surety he can present as a claim against the bankrupt's estate. Their equities fully balance any supposed equities of the plaintiff on the questions of merger and apportionment.

7. The rejected evidence should have been admitted. *Crowley* v. *Page*, 7 Car. & P., 789; *Yeaton* v. *Chapman*, 65 Maine, 126.

*O. A. G. Todd* and *W. F. Taylor*, contra.

1. The objections to the charge of the court are all based upon the sale of the interest of the assignee in the lease, the defendant claiming, and asking the court in various ways to charge the jury, that such sale was in law an assumption of the lease and a taking possession of the leased property by the assignee. The court made substantially the same charge as to all the requests, that if the assignee assumed the lease and took possession of the property, with the intention of assuming the responsibility of the covenants in the lease, then the surety would be discharged of his liability as surety under the lease; but that if the assignee did not so assume the lease and take possession of the property then the defendant would not be so discharged; that it was a fact for the jury to find

whether or not the assignee had assumed the lease and taken possession; that if they should find that he had done so the defendant would be discharged from his liability after the 13th of February, 1875, otherwise he would not be discharged as such surety. This charge was more favorable to the defendant than he was entitled to. An assignee is not obliged to assume a lease of property given to the bankrupt. He has his election to assume the lease or not, and has no interest in it until he makes such election to assume the lease and takes possession of the property, and until such election is made by him the lease and property remain in the bankrupt. 3 Parsons on Cont., 467, note *t.*

2. Such election must be made in a reasonable time. *Tuck* v. *Fyson*, 6 Bing., 321; 3 Parsons on Cont., 467, note *t*; 2 Smith Lead. Cas., (7th Am. ed.,) 1243. The motion finds that the bankrupt remained in possession of the property described in the lease until August, 1875, and until he was ejected by virtue of an execution in a judgment of summary process. The sale was not made until the month of October following, and when the lessor was in possession of the premises. If possession was taken by the assignee by this sale, it was not within a reasonable time.

3. The bankrupt lessee, by the terms of the lease, only had the right to possess and enjoy the use of the property, without any power to assign it to a third person without the written permission of the lessor. Consequently no estate passed to the assignee by the bankruptcy of the lessee. *In re O'Dowd*, 8 Bank. Reg., 451; Bump on Bankruptcy, 9th ed., 490. Voluntary and involuntary bankruptcy stand upon the same ground in their effect upon such a lease. Bump on Bankruptcy, 491; *Starkweather* v. *Cleveland Ins. Co.*, 4 Bank. Reg., 341; *S. C.*, 2 Abbott C. C., 67; *Perry* v. *Lorillard Ins. Co.*, 14 Bank. Reg., 339; *S. C.*, 61 N. York, 214.

4. Under the bankrupt law the discharge of the bankrupt does not discharge, release, or affect the defendant as surety or guarantor in this lease, but he is holden in the same manner as if no proceedings in bankruptcy had been commenced. U. S. Statutes, sec. 5, 118; Bump on Bankruptcy, 732; *In re*

*Levy*, 1 Bank. Reg., 327; *S. C.*, 2 Bened. R., 169; *Claflin* v. *Cogan*, 48 N. Hamp., 411; *Jones* v. *Russell*, 44 Geo., 460; *Payne* v. *Able*, 7 Bush, 344; *Morse* v. *Waller*, 1 A. K. Marsh., 488.

PARK, C. J.   It was an important question, in this case, whether Wildman, the assignee in bankruptcy, had elected to appropriate the lease in question for the benefit of the creditors of the bankrupt, and had performed some act of ownership over the property in pursuance of such election.   He was not bound to take the property and appropriate it for such purpose unless the lease was valuable.   His duty required him to determine whether the lease would or would not be beneficial to the creditors of the bankrupt, and to act accordingly.

In *Turner* v. *Richardson et al.*, 7 East, 336, Lord Ellenborough says: "It has been decided that assignees of a bankrupt are not bound to take what Lord Kenyon called a *damnosa hæreditas;* property of the bankrupt which, so far from being valuable, would be a charge to creditors; but they may make their election.   If however they do elect to take to the property, they cannot afterwards renounce it because it turns out to be a bad bargain."   Gross, J., says, in the same case: "They were assignees of a bankrupt's estate for the benefit of his creditors, and they were to consider whether it were for the benefit of the creditors that they should take to the property or waive it.   On the one hand, if they entered and were possessed, they became liable to be sued upon the bankrupt's covenants for rent and non-repair, which might amount to more than the value of the lease; on the other hand, if the lease were valuable, and they did not take to it, the creditors would have had a right to call upon them for neglect of their duty."

Chitty, in his work on Contracts, page 240, says: "It is clear that the interest of the bankrupt in any such land, or under any such conveyance or agreement for a conveyance, or lease or agreement for a lease, does not vest in his assignees absolutely by virtue of the fiat; but such interest remains

in the bankrupt until the assignees do some act amounting to an acceptance thereof."

In *Copeland* v. *Stevens*, 1 Barn. & Ald., 593, the court says: "The assignees of a bankrupt are not bound to accept a term of years that belonged to the bankrupt, subject to the rents and covenants, for the object of the statute and of the assignment being the payment of the bankrupt's debts, and the assignees under the commission being trustees for that purpose, the acceptance of a term which, instead of furnishing the means of such payment, would diminish the fund arising from other sources, cannot be within the scope of their trust and duty."

Parsons, in his work on Contracts, Vol. 3, page 489, says: "If the assignee elects not to take, the lease remains in the bankrupt, with all its advantages and all its burdens, and free from all claims or right either of the assignee or of the creditors."

Washburn, in his work on Real Property, Vol. 1, page 340, says: "And in cases of general assignment by insolvents, or by proceedings in insolvency, the assignee will have a reasonable time in which to ascertain whether the lease can be made available for the benefit of creditors, before he will be obliged to make his election," (whether he will claim the lease under the assignment or not.)

It follows, therefore, if Wildman the assignee did not accept the assignment of the leasehold estate of the bankrupt, that the lease remained the property of the bankrupt, and consequently the defendant would be liable on his guaranty, inasmuch as it appears that the rent which had accrued during a part of the time covered by the guaranty is in arrears.

If Wildman accepted the assignment, then it follows that he sold the interest of the bankrupt in the lease to the plaintiff, who was the lessor of the property to the bankrupt, and both the lease and the guaranty thereby became extinguished before the year covered by the guaranty had expired; for the acceptance of the assignment of the lease took relation from the time when the bankrupt proceedings were instituted, which

was before the year covered by the guaranty had expired, and consequently there could be no liability on the part of the defendant.

Hence the liability of the defendant turns upon the question whether or not Wildman accepted the assignment of the lease.

During the trial of the case in the court below, the defendant, in order to show that Wildman did in fact accept the assignment of the lease, offered evidence to show that he employed counsel to defend an action of summary process brought by the plaintiff against the bankrupt. The plaintiff offered Wildman as a witness, who testified that he had no recollection whether he employed counsel to defend the bankrupt in the suit or not, but thought he did not assume the responsibility of defending the case. The defendant in rebuttal offered a witness to prove that he heard Wildman engage counsel to defend the suit.

The plaintiff objected to the reception of this evidence, and the court excluded it, and we think the court erred in so doing. The suit was brought after Wildman had been appointed assignee, and if he then had accepted the assignment of the lease it would be expected of him to defend the bankrupt. This evidence therefore was pertinent and important evidence upon the question whether he had accepted the assignment.

It does not appear upon what ground the objection to the evidence was based, but probably upon the ground that it was evidence in chief, and was not proper rebutting testimony. But after Wildman had testified that he thought he did not assume the responsibility of defending the suit, the evidence was proper to disparage his testimony, and thereby support the evidence which had been offered in chief. His testimony tended to establish the fact that he did not employ counsel to defend the suit, although he did not testify positively on the subject. Doubtless the evidence offered in rebuttal might have been given in chief; still, inasmuch as it was not done, it was properly admissible in rebuttal to discredit the testimony of Wildman.

We have refrained from deciding whether the court below erred in omitting to charge the jury, as the defendant requested, that the sale of the assignee's interest in the lease, and the acceptance of quite a sum of money as the proceeds of the sale, were in law an acceptance of the lease under the assignment, for if the question of acceptance is one of fact, a new trial must be advised, on account of the ruling which we have just been considering, the evidence rejected by the court being admissible upon the question of acceptance as one of fact; and if the question be one of law, and the court therefore erred in refusing so to charge the jury, we could do no more than grant a new trial.

We will say, however, that it is difficult to see how an assignee in bankruptcy can sell the lease of the bankrupt, and receive therefor a large sum of money for the benefit of creditors, without accepting the assignment of the lease.

In *Turner* v. *Richardson*, supra, the assignees advertised the lease for sale at public auction, in order to ascertain whether it had any value; and this was done without stating that the leasehold estate belonged to them; and afterward, in accordance with the advertisement, the lease was put up for sale, but no bidder appearing the estate was not sold; and it was held that the assignees might thus experiment in order to ascertain whether the lease had any value, without committing themselves to an acceptance of the lease. But the court strongly intimate that if a bidder had appeared and the premises had been sold, the assignees would have been holden to an acceptance of the assignment.

In *Hastings* v. *Wilson*, 1 Holt N. P. C., 290, the assignees put up the premises at public auction, and there was a purchaser, and a deposit paid, but the contract of sale went off without the assignees showing why they did not enforce the sale. It was held that the assignees were liable.

In *Welsh* v. *Myers*, 4 Camp., 368, the bankrupt was lessee of pasture land, and the assignee suffered his cows to remain on the land for two days, and ordered them to be milked there. Lord Ellenborough was of the opinion that this was an adoption of the lease by the assignee.

Vol. XLIV.—57

· So, intermeddling with the farm land of the bankrupt has been held sufficient to establish an acceptance by the assignee. *Thomas* v. *Pemberton*, 7 Taunt., 206. So also carrying on business upon the premises. *Clarke* v. *Hume*, 1 Ry. & Mood., 207. These cases, and many more which might be cited, seem to go as far as the defendant requested the court to go in this case.

A new trial is advised.

In this opinion the other judges concurred.