## In re INMAN & CO.

### (District Court, N. D. Georgia.   June 7, 1909.)

**1. BANKRUPTCY (§ 320\*)—PROVABLE DEBTS—CONTINGENT CLAIMS—FUTURE SALARY OF EMPLOYÉ.**

Bankr. Act July 1, 1898, c. 541, § 63a, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447), does not authorize the proving in bankruptcy of contingent debts or liabilities, nor is anything added in that respect by section 63b, providing for the liquidation of unliquidated demands, and on that ground an employé of a bankrupt whose contract of employment had not expired, but whose services were dispensed with by reason of the bankruptcy, cannot prove for salary beyond the date of the filing of the petition, which would be for a contingent liability.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 479; Dec. Dig. § 320.\*]

**2. BANKRUPTCY (§ 318\*)—PROVABLE DEBTS—EFFECT OF ADJUDICATION IN BANK-RUPTCY—CONTRACTS OF EMPLOYMENT.**

An adjudication in involuntary bankruptcy against an employer terminates a contract of employment by operation of law, especially where the bankrupt is a partnership, and the employé has no claim for damages for breach of the contract provable against the estate in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.\*]

In Bankruptcy.   On certificate from referee.

Lamar & Callaway and McDaniel, Alston & Black, for claimants.
Slaton & Phillips, for trustee.

NEWMAN, District Judge.   The claim made in this case will appear from the paper sent up by the referee on the petition for review, as follows:

"I, Percy A. Adams, one of the referees of said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me the following question arose pertinent to said proceeding:

"T. B. Ketterson filed a proof of claim wherein he claimed of the estate of Inman & Co., bankrupt, $225.   By amendment which was allowed by consent, it was set up that 'the consideration of said debt being that on the 1st day of October, 1907, deponent was employed for 10 months at the rate of $150 per month, that deponent entered upon said employment on October 1, 1907, and continued in the employment of said firm until May 4, 1908, when the said firm was adjudged bankrupt, and that the sum of $225 now due is the amount due under said contract for the period from May 4, 1908, to July 1, 1908, the date fixed in the contract for the termination of the said contract of employment and for damages for the breach thereof.'

"To the original claim the trustees through their counsel demurred, and for demurrer set up that said claim is not a provable claim in bankruptcy as to any amount claimed subsequent to the filing of petition in bankruptcy.   The trustees without waiving demurrer also answered.

"To the claim as amended the trustees filed a motion to expunge on the grounds that the said claim is not a provable claim in bankruptcy; that the amount claimed to be due was not due and owing at the date of bankruptcy; that said claim was not a fixed liability absolutely owing at the time of the filing of the petition in bankruptcy in this cause; that it was an existing demand at such time, but both the existence and the amount of the possible future demands are contingent upon unforeseen events; and that it is neither an unliquidated nor liquidated provable claim, nor was it an unliquidated or liquidated provable claim on the date of the bankruptcy.

"Said matter having come on for hearing before me on the said demur-

rer and the motion to expunge, I have passed an order expunging the said claim and sustaining the demurrer thereto. The said T. B. Ketterson being dissatisfied with said judgment, and having requested that the same be certified to the judge of the United States District Court for the Northern District of Georgia, the said question is accordingly certified to the judge of said court for his opinion thereon. .

"A copy of the original proof of claim and the demurrer thereto, and of the answer thereto, and of the amended proof and the consent of counsel allowing the said amendment and of the motion to expunge filed on behalf of the trustees are attached hereto."

It will be perceived from the foregoing that T. B. Ketterson was in the employment of the bankrupt firm at the time the proceedings in bankruptcy were filed, and that the term for which he was employed had not expired when the bankruptcy occurred. He seeks to prove a claim for the unexpired portion of the time of his employment. He was allowed without objection the amount that was due him at the time the bankruptcy proceedings were instituted, and, as it was less than three months, he was allowed priority for the same.

The question presented is an interesting one, and is almost without direct authority since the passage of the present bankruptcy act. The right to prove, if it exists at all, is under paragraph 4, § 63, of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]). Section 63 provides that:

"Debts of the bankrupt may be proven and allowed against his estate which are * * * (4th) founded upon an open account or upon a contract expressed or implied."

Section 63b provides that:

"Unliquidated claims against the bankrupt, may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate." .

It is conceded that if a breach of contract had occurred prior to the commencement of the bankruptcy proceedings, and the claim for damages on account of the breach already existed, that the amount of such damages might be liquidated in such manner as the court might direct; but the immediate question is whether where there is a discontinuance of employment growing out of, and resulting from, the filing of a petition in bankruptcy, and that only the right to damage exists and may be proved and the amount of such damage ascertained. Stating the inquiry somewhat differently, it is this: Whether, where proceedings in involuntary bankruptcy are instituted, followed by an adjudication, and the bankrupt is a party to a contract of employment not terminated, this of itself is a breach of the contract on the part of the bankrupt, or is the contract simply terminated and annulled by operation of law without any default on the part of the bankrupt? The latter being true, there is no cause of action arising as for a breach of contract.

The present bankruptcy act is entirely different from Act March 2, 1867, c. 176, 14 Stat. 517, as to the right to prove claims such as are presented here. That act provided in section 19 (Rev. St. 5067, 5068):

"In all cases of contingent debts and contingent liabilities contracted by the bankrupt, and not herein otherwise provided for, the creditor may make claim therefor, and have his claim allowed, with the right to share in the div-

idends, if the contingency shall happen before the order for the final dividend, or he may at any time apply to the court to have the present value of the debt or liability ascertained and liquidated, which shall then be done in such manner as the court shall order, and he shall be allowed to prove for the amount so ascertained. * * * If any bankrupt shall be liable for unliquidated damages arising out of any contract or promise * * * the court may cause such damages to be assessed in such mode as it may deem best and the sum so assessed may be proven against the estate."

There is no such language in the act of 1898. This omission is significant, and is important in passing on the question here presented.

The only case decided by the Supreme Court of the United States which throws any light on this question under the present act, so far as the citation of counsel, and my examination, show, is Dunbar v. Dunbar, 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084. In that case there was an effort to prove in bankruptcy by a wife, who, anticipating divorce, had separated from her husband, a claim against him on an agreement to pay her a certain amount yearly for her own support and a certain amount for the support of their children. The agreement was to pay the wife the amount stipulated so long as she remained unmarried, and the children until they came to the age of 21 years. It was held that the contract, so far as it related to the wife, was not a contingent liability provable under the act of 1898, and, as to the children, it was held that his duty as a father to his minor children was an obligation from which it could not be supposed it was the intention of the bankruptcy act to discharge him. In the opinion Mr. Justice Peckham, after referring to the English bankruptcy act of 1869, says:

"No such broad language is found in our bankruptcy act of 1898. Section 63a provides for debts which may be proved, which, among others, are (1) 'a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest on such as were not then payable and did not bear interest;' (4) 'founded upon an open account, or upon a contract express or implied.'

"In section 63b provision is made for unliquidated claims against the bankrupt, which may be liquidated upon application to the court in such manner as it shall direct and may thereafter be proved and allowed against his estate. This paragraph 'b,' however, adds nothing to the class of debts which might be proved under paragraph 'a' of the same section. Its purpose is to permit an unliquidated claim coming within the provisions of section 63a to be liquidated as the court should direct.

"We do not think that by the use of the language in section 63a it was intended to permit proof of contingent debts or liabilities or demands the valuation or estimation of which it was substantially impossible to prove.

"The language of section 63a of the act of 1898 differs from that contained in the bankruptcy act of 1867, and also from that of 1841. Act March 2, 1867, c. 176, § 19, 14 Stat. 517, 525, carried into the Revised Statutes as section 5068, provided expressly for cases of contingent debts and contingent liabilities contracted by the bankrupt, and permitted applications to be made to the court to have the present value of the debt or liability ascertained and liquidated, which was to be done in such manner as the court should order, and the creditor was then to be allowed to prove for the amount so ascertained.

"Section 5, Act Aug. 19, 1841, c. 9, 5 Stat. 444, provides in terms for the holders of uncertain or contingent demands coming in and proving such debts under the act. But neither the act of 1841 nor that of 1867 would probably cover the case of such a contract as the one under consideration."

According to this, section 63b adds nothing to section 63a as to the class of debts which may be proven, and it was not intended by section 63a to admit proofs of contingent debts or contingent liabilities. The liability here on the part of the employers was certainly contingent. It was contingent upon the life, health, and ability to render services on the part of the employé in the future, and contingent also upon the life of the members of the firm of Inman & Co. The death of one member would have dissolved the firm and necessitated the winding up of its affairs.

A number of decisions have been cited from other District Courts and some from Circuit Courts of Appeals in other circuits. The only one I have seen in the Circuit Courts of Appeals for this circuit is Atkins v. Wilcox, 105 Fed. 595, 44 C. C. A. 626, 53 L. R. A. 118. This was an effort to prove a claim for future rental and the judgment of the District Court refusing to allow the claim was affirmed. This decision is in line with the decisions on the subject of rent contracts, and it is conceded by counsel for the claimants here that contracts for future rent are not provable under the present bankruptcy act. The latest decision I have seen on this question of the right to recover rent not due is In re Rubel et al. (D. C.) 166 Fed. 131. The case was decided by Judge Quarles of the District Court for the Eastern Division of Wisconsin. In that opinion it is said:

"The text-books and the authorities all seem to concur in the proposition that rent upon such a lease which has not accrued at the time of adjudication cannot be proven as a claim in bankruptcy. Loveland on Bankruptcy (3d Ed.) 265, 268; Collier on Bankruptcy, 479; In re Jefferson (D. C.) 93 Fed. 948; Bray v. Cobb (D. C.) 100 Fed. 270; Atkins v. Wilcox, 105 Fed. 595, 44 C. C. A. 626, 53 L. R. A. 118; In re Hays and Foster (D. C.) 117 Fed. 879; Watson v. Merrill, 136 Fed. 359, 69 C. C. A. 185, 69 L. R. A. 719. These authorities are not in accord as to the method of reasoning by which the conclusion is reached. Some of them hold that the adjudication destroys the relation of landlord and tenant, and practically annuls the lease. Others hold that the claim, not being provable in bankruptcy, is not affected by the discharge; that the bankrupt remains bound by his covenant; but that the trustee is not bound thereby. It is conceded on all hands that the trustee has a reasonable time after his appointment to determine whether he will adopt the lease as an asset of the estate, and offer the same for sale, or whether he will ignore it entirely. For practical purposes it makes no difference in the instant case which line of authority is adopted, for either is fatal to a recovery of rent, as such, for the unexpired term."

After some other discussion immaterial here the judge concludes:

"It may be remarked in passing that, if application had been made to liquidate the claim pursuant to section 63b, the proceeding would have been ineffective unless the claim were of such a nature that, being liquidated, it might have been proven under section 63a. Dunbar v. Dunbar, 190 U. S. 340, 350, 23 Sup. Ct. 757, 47 L. Ed. 1084. We have seen that the unearned installment of rent, although liquidated by a written lease, cannot be proven under section 63a, so that the proceeding to liquidate would have been unavailing in the instant case."

Counsel for the claimants here rely mainly upon the following cases: In re Swift, 112 Fed. 315, 50 C. C. A. 264, In re Stern, 116 Fed. 604, 54 C. C. A. 60, and In re Pettingill & Co. (D. C.) 137 Fed. 143, and upon the cases therein cited, particular stress being laid upon the case cited by Judge Lowell, Ex parte Pollard, Fed. Case No. 11,252

(2 Lowell, 411, and 17 N. B. R. 228). The second headnote in the latter case is to this effect:

"The filing of a petition in bankruptcy by a corporation ipso facto dissolves the contract with an employé, and is tantamount to a dissolution, and he may have his damages assessed and prove his amount in a bankruptcy court."

It may be remarked that this decision, Ex parte Pollard, was under the act of 1867, which, as has been stated, in reference to the proof of claims of this character was entirely different from the present act. None of the other cases relied upon were cases of employer and employé. In re Pettingill & Co. (D. C.) 137 Fed. 143, Judge Lowell in the opinion says:

"It seems, therefore, that the test of provability under the act of 1898 may be stated thus: If the bankrupt at the time of bankruptcy by disenabling himself from performing the contract in question, and by repudiating its obligation, could give the proving creditor the right to maintain at once a suit in which damages could be assessed at law or in equity, then the creditor can prove in bankruptcy on the ground that bankruptcy is equivalent of disenablement and repudiation. For the assessment of damages proceedings may be directed by the court under section 63b (30 Stat. 562 [U. S. Comp. St. 1901, p. 3447])."

Counsel for the claimants here also consider In re Silverman (D. C.) 101 Fed. 219, as favorable to them. In that case Silverman Bros. on the 9th day of January, 1899, made a deed of trust of their stock of goods in favor of their creditors. One Swift was named as trustee in the deed of trust, and took possession of the stock of goods, and on the same day, January 9, 1899, discharged from the store the employés under Silverman Bros., including one Rosenberg. On the 18th day of January thereafter proceedings in involuntary bankruptcy were instituted against Silverman Bros., and Swift was appointed receiver. Rosenberg's claim was based upon the breach of his contract of employment, and he claimed $1,200 for the remainder of the contract year. In the opinion in this case Judge Philips says:

"There can be no question but what if on the 9th day of January, 1899, there was a breach of the contract between Silverman Bros. and Rosenberg by his discharge from their service, or by their voluntary act which rendered the performance of the contract on their part impossible, a cause of action at once arose in favor of Rosenberg against Silverman Bros. for damages; and it is equally clear that the subsequent adjudication of bankruptcy in February, 1899, did not put an end to the cause of action, as it was then an existing right, which the mere adjudication in bankruptcy could not destroy. So the real question in this case is not whether an adjudication in bankruptcy against the employer would put an end to a contract with an employé like the one in question, so that the discharge of the employé would be under the operation of the bankruptcy law, and not by reason of the voluntary act of the employer, but it is whether or not the act of Silverman Bros. in making the deed of trust and placing Swift in absolute charge of the store and its business, whereby Rosenberg was displaced as manager and employé, did not constitute a breach of the contract, and create a subsisting cause of action, three weeks before the adjudication in bankruptcy."

The court then holds that there was such a breach of contract, and fixes the amount that Rosenberg would be entitled to recover. I do not consider this case of In re Silverman authority either way.

In the case of In re Imperial Brewing Company (D. C.) 143 Fed.

579, decided by Judge Philips for the Western District of Missouri, it is said:

"The question to be decided is; Did the adjudication in bankruptcy against the Imperial Brewing Company in and of itself constitute such a breach of the contract as to mature the whole executory contract, entitling the claimant to prove up and have allowed against the estate in bankruptcy the damages claimed? While the statement of the petition is a little indefinite respecting the proceedings leading to the adjudication, the court will take cognizance of its own records, which show that it was an involuntary proceeding in bankruptcy—necessarily so because the corporation could not on its own voluntary petition be adjudged a bankrupt. While the petition herein states that the Imperial Brewing Company was permanently disabled from performing said contract and repudiated the same in all its parts, and that it retired permanently from business and was hopelessly insolvent, etc., these results are alleged to follow 'by reason of said bankruptcy proceedings.' At the time of the adjudication in bankruptcy, there was no debt owing by the bankrupt to the claimant. There had been no delivery or tender of delivery prior thereto, and none since. It may be conceded as the law of this jurisdiction that where a party is bound from time to time, as expressed in the contract, to deliver articles to be manufactured or products to be grown, each parcel as delivered to be paid for at a certain time and in a certain way, a refusal by the vendee to be further bound by the terms of the contract or to accept further deliveries constitutes a breach of the contract as a whole, and gives the vendor a right of action to recover the damages he may sustain by reason of such refusal. In such case the positive refusal of the vendee to perform when tender is made, or notice by him to the vendor before maturity of the time for delivery that he will not carry out the contract, will release the vendor from making any tender, and entitle him to an action in advance of the fixed period for delivery on his part to recover damages as for breach of the whole contract. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. The sole reliance of the claimant to bring it within this rule for such breach is predicated on the adjudication in an involuntary proceeding in bankruptcy against the vendee. I am unable to consent to the proposition that such an adjudication in bankruptcy, ex vi termini, is in law tantamount to a refusal of the bankrupt to perform, or that it thereby permanently disabled itself from performance to bring the claim asserted by petitioner within the operation of the rule laid down in Roehm v. Horst, supra."

The judge then cites and quotes from the opinion in Watson v. Merrill, 136 Fed. 359, 69 C. C. A. 185, 69 L. R. A. 719, decided by the Circuit Court of Appeals for the Eighth Circuit, and in Re Swift, supra, and says:

"In Re Swift, 112 Fed. 315, 50 C. C. A. 264, a broker had made a contract to deliver certain stock to a customer. It was held that he made it impossible to fulfill his agreement to deliver the stock by his adjudication in bankruptcy, for the reason that it took the stock from him and vested it with all his property, in his trustee. But that is clearly not this case."

Judge Philips refers to In re Pettingill & Co., supra, in this way:

"I may say that I can concur in the syllabus of that case that, under the bankruptcy act, the provability of a claim depends upon its status at the time of the filing of the petition in bankruptcy. If not then a provable debt, as defined in the act, it cannot be proved, although it may thereafter come within such definition. * * * If, however, it was intended to hold that as applied to an executory contract for the sale of annual crops to be raised in successive years, where no breach had occurred at the time of an involuntary adjudication in bankruptcy, the mere act of such declared statutory insolvency constituted such a breach of the contract as to enable the vendor to prove up against the estate the contingent damages, as, on a repudiation of the contract by the vendee, I cannot consent thereto. There was no renunciation by the vendee company of the contract after the commencement of

performance or renunciation before the time for performance had arrived. Nor has the vendee deliberately incapacitated itself or rendered performance of the contract impossible within the rule laid down in Roehm v. Horst, 178 U. S. 18, 20 Sup. Ct. 787, 44 L. Ed. 953. As a discharge in bankruptcy under section 1, cl. 12, means no more than 'the release of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted by the act,' and the claim for damages for a possible future breach of a contract is not a debt provable against the estate, in the absence of any refusal on the part of the bankrupt to recognize the contract, and he has not voluntarily or positively disabled himself from performing it, where its performance does not become obligatory until after the adjudication in bankruptcy, my conclusion is that the claim in question is not one provable in bankruptcy. It is a noteworthy fact that, under the bankrupt acts of 1841 and 1867, the right was given to prove 'uncertain and contingent demands' against the estate. This provision was omitted from the present bankruptcy act of 1898. In my judgment this omission is significant."

The important question in the instant case, and the one which in my judgment is controlling, is discussed in the cases to which I shall now refer. The first of these is In re Jefferson (D. C.) 93 Fed. 948, decided by Judge Evans for the District of Kentucky. The syllabus in that case is as follows:

"A lease for a term of years, reserving rent payable in monthly installments, is terminated by the adjudication of the lessee as a bankrupt during the term; and the landlord has no provable claim against the tenant's estate in bankruptcy for the rent which would have accrued under the lease after the date of such adjudication."

The reasoning of the court in the opinion to the effect that proceedings in bankruptcy terminate the relation of landlord and tenant applies, it seems to me, with equal force to the relation of employer and employé. The next case in order is that of Bray v. Cobb (D. C.) 100 Fed. 270, decided by Judge Purnell for the Eastern District of North Carolina. In the opinion he says:

"The relation of landlord and tenant is severed by operation of the bankruptcy law."

The question was again presented before Judge Evans in Re Hays, Foster & Ward Company (D. C.) 117 Fed. 879, and the opinion expressed in Re Jefferson, supra, was reiterated. In both cases the conclusion reached is based largely upon the decisions in Bailey v. Loeb, 2 Fed. Cas. 376; In re Webb, 29 Fed. Cas. 494; In re Breck, 4 Fed. Cas. 43. In Watson v. Merrill, 136 Fed. 359, 69 C. C. A. 185, 69 L. R. A. 719, decided in the Circuit Court of Appeals for the Eighth Circuit, the opinion being delivered by Circuit Judge Sanborn, the court differs from the views expressed in the three cases just referred to, although it reaches the same result; that is, that a claim for damages for a breach of a contract in a lease to pay installments of rent for the use of the premises at times subsequent to the filing of the petition in bankruptcy is not provable under the bankruptcy law of 1898. In the opinion it is said:

"An adjudication in bankruptcy does not dissolve or terminate the contractual relations of the bankrupt, notwithstanding the decisions to the contrary in Re Jefferson (D. C.) 93 Fed. 448; Bray v. Cobb (D. C.) 100 Fed. 270; and Re Hays, Foster & Ward Company (D. C.) 117 Fed. 879. Its effect is to transfer to the trustee all the property of the bankrupt except his executory contracts, and to vest in the trustee the option to assume or to renounce

these. It is the assignment of the property of the bankrupt to the trustee by operation of law. It neither releases nor absolves the debtor from any of his contracts or obligations, but, like any other assignment of property by an obligor, leaves him bound by his agreements and subject to the liabilities he has incurred. It is the discharge of the bankrupt alone, not his adjudication, that releases him from liability for provable debts in consideration of his surrender of his property, and its distribution among the creditors who hold them. Even the discharge fails to relieve him from claims against him that are not provable in bankruptcy, and, since the filing of the petition in bankruptcy may not be the basis of a provable claim, his liability for them is neither released nor affected by his adjudication in bankruptcy, or by his discharge from his provable debts. One agrees to pay monthly rents for the place of residence of his family or for his place of business, or to render personal services for monthly compensation for a term of years, he agrees to purchase or to convey property, and he then becomes insolvent and is adjudicated a bankrupt. His obligations and liabilities are neither terminated nor released by the adjudication. He still remains legally bound to pay the rents, to render the services, and to fulfill all his other obligations, notwithstanding the fact that his insolvency may render him unable immediately to do so. Nor are those who contracted with him absolved from their obligations. If he or his trustee pays the stipulated rents for his place of residence or for his place of business, the lessors may not deny to the payor the use of the premises according to the terms of the lease. If he renders the personal services, he who contracted to pay for them may not deny his liability to discharge this obligation. His trustee does not become liable for his debts, but he does acquire the right to accept and assume or to renounce the executory agreements of the bankrupt as he may deem most advantageous to the estate he is administering, and the parties to those contracts which he assumes are still liable to perform them. And so, throughout the entire field of contractual obligations, the adjudication in bankruptcy absolves from no agreement, terminates no contract, and discharges no liability. In re Curtis, 9 Am. Bankr. Rep. 286, 109 La. 171, 33 South. 125; In re Ells (D. C.) 98 Fed. 967, 968; Witthaus v. Zimmerman, 11 Am. Bankr. Rep. 314, 315, 91 App. Div. 202, 86 N. Y. Supp. 315: White v. Griffing, 44 Conn. 437, 446, 447; In re Pennewell, 119 Fed. 139, 55 C. C. A. 571."

It will be seen from the foregoing that the conclusion reached in this case of Watson v. Merrill was that claims for future rent, and probably, from the language used in the opinion, for future personal services, are not provable in bankruptcy, though the reason given therefor is entirely different from that given in the other cases. According to this last opinion contracts such as those in question here will remain of force and unaffected by the bankruptcy proceedings. Bailey v. Loeb, 2 Fed. Cas. 376, was decided under the act of 1867 by Circuit Judge Wood, afterwards a Justice of the Supreme Court. An extract from the opinion in that case will show the view that Judge Wood entertained of the matter, as follows:

"For instance, a business man has a manager or bookkeeper hired by the year, at a salary payable quarterly. At the end of two months he is adjudicated bankrupt. His manager or bookkeeper may prove for a proportionate part of his salary up to the time of the bankruptcy, but he cannot prove for any part that may accrue and fall due after the bankruptcy. The clear purpose of the bankruptcy act is to cut off all claims for rent to accrue, or for services to be rendered, after the date of the bankruptcy."

The fact that this decision by Judge Wood was under the bankruptcy act of 1867 strengthens it as an authority, because it is generally conceded that the bankruptcy act of 1867 was more liberal as to the proof of claims for contingent liabilities than is the present act. In

Malcomson v. Wappoo Mills et al. (C. C.) 88 Fed. 680, Judge Simonton held that:

"Damages are not recoverable against a corporation for its failure to perform a contract for the sale and delivery of merchandise, where performance was prevented solely by the action of a court in appointing a receiver for the corporation, and enjoining all others from interfering with its business or property. In such cases the breach of contract is damnum absque injuria."

It seems clear to me that adjudication in bankruptcy ends contracts for rent, and for personal services, and I agree with the views expressed in the opinions in In re Jefferson, supra, Bray v. Cobb, supra, In re Hayes, Foster & Ward Company, supra, and Malcomson v. Wappoo Mills et al., supra. The case of James Dunlap Carpet Company (D. C.) 163 Fed. 541, is a case favorable to the contention of the claimants here to the extent of allowing proof of claim. The difficulty about the case to my mind is that the learned judge based his decision on Moch v. Market Street National Bank, 107 Fed. 897, 47 C. C. A. 49. In the case of Moch v. National Bank the person seeking to prove had indorsed for the bankrupt and the paper matured after the bankruptcy proceedings were instituted. The indorser paid the paper, and then proposed to prove it as a debt against the bankrupt in the bankruptcy proceedings. I can see no similarity at all between such a case and the case of an employé seeking to prove for salary to be earned by services to be rendered in the future. The indorsement in the Moch Case was a definite and fixed liability which the indorser had undertaken for the bankrupt, and it was in existence before the bankruptcy proceedings commenced. It matured, and the indorser was compelled to pay the debt pending the bankruptcy proceedings. This is entirely different from a contract to render personal services. Such services depend upon the life, health, and ability otherwise of the employé to render the services, and also upon the life, certainly, and perhaps other contingencies as to the employer. But it is a partnership in bankruptcy here, and whatever is true as to individual cases there would seem to be no doubt, first, that a partnership is dissolved by the bankruptcy proceedings (22 Am. & English Cyclopedia of Law [2d Ed.] 202, and 30 Cyc. 65-, and cases cited in both); and, second, if the firm is dissolved by operation of law, then certainly the contracts of that firm are ended.

In Griggs v. Swift, 82 Ga. 392, 9 S. E. 1062, 5 L. R. A. 405, 14 Am. St. Rep. 176, it is held in the opinion by Chief Justice Bleckley:

"From the very nature of a contract for the rendering of personal services to a partnership in its current business, where nothing is expressed to the contrary, both parties should be regarded as having by implication intended a condition dependent on the one hand upon the life of the employé, and, on the other, upon the life of the partnership, provided the death in either case was not voluntary."

Wood on Master and Servant, § 163, is then quoted with approval to the following effect:

" 'Where a servant is employed by a firm, a dissolution of the firm dissolves the contract, so that a servant is absolved therefrom; but, if the dissolution results from the act of the parties, they are liable to the servant for his loss therefrom, but, if the dissolution results from the death of a member of the

firm, the dissolution resulting by operation of law, and not from the act of the parties, no action for damages will lie. * * * So, if .a firm consists of two or more persons, and one or more of them dies, but the firm is not thereby dissolved, the contract still subsists, because one or more of his partners is still in the firm, and this is so even though other persons are taken into the firm. The test is whether the firm is dissolved. So long as it exists, the contract is in force. but, when it is dissolved, the contract is dissolved with it, and the question as to whether damages can be recovered therefor will depend upon the question whether the dissolution resulted from the act of God, the operation of law, or the act of the parties.' "

None of the cases cited from the United States courts seem to bear directly upon the question immediately involved here—that is, of the right of an employé to prove for future services—except, perhaps, the case of James Dunlap Carpet Company, supra, and with the utmost respect for the learned judge deciding the case I am, for the reason stated above, unable to agree with his conclusion. I have, perhaps, cited authorities at unnecessary length, but the question is an interesting one, and is presented in its present shape for the first time in this district. I do not believe that it was the intention and purpose of the bankruptcy act that contracts extending into the future for rent and personal services should be left hanging over the bankrupt to embarrass and harass him after his discharge in bankruptcy. It is said that if this is not true, and he is relieved of such liability by the bankruptcy act, it follows that claims for such rent and personal service should be admitted to proof in the bankruptcy proceedings. I do not think this follows at all. The adjudication in bankruptcy ends all such contracts. Of course, proof may be allowed for any amount due prior to the institution of the proceedings in bankruptcy. It is provided by the bankruptcy act that for most personal services the employé would have priority for any amount due him for as much as three months preceding the bankruptcy proceedings. This fact of priority of payment for three months extending to so large a class of employés is another reason why I believe it was the intention, in passing this act, that such contracts should terminate with the adjudication in bankruptcy. All this is certainly true as to a partnership. The adjudication dissolves it by operation of law, and that dissolution ends all its liabilities except such as are expressed in the act.

My conclusion is that the referee in bankruptcy correctly decided that this claim should not be admitted to proof.

What has been said in the foregoing applies equally to the claim of J. F. Maybank, which is of the same character, and which was argued at the same time as was the claim of T. B. Ketterson.